ESPINOSA v. TRADESOURCE, INC.

[231 N.C. App. 174 (2013)]

JORGE A. ESPINOSA, Employee, Plaintiff
v.
TRADESOURCE, INC., Employer, ARCH INSURANCE COMPANY, Carrier, and
(GALLAGHER BASSETT SERVICES, INC.,Third-Party Administrator), Defendants

No. COA13-220, COA13-466

Filed 3 December 2013

1. **Workers' Compensation—notice of appeal—timely filed—Rule 702**

   Plaintiff's argument that Paradigm's notice of appeal in a workers' compensation case was untimely filed was erroneous. Paradigm's motion for reconsideration and the Industrial Commission's denial of that motion did not arise under Rule 60(b) of the North Carolina Rules of Civil Procedure. Instead, Industrial Commission Rule 702 was applicable and Paradigm's motion for reconsideration tolled the filing period for its notice of appeal, which was filed well within thirty days of the Industrial Commission's order.

2. **Workers' Compensation—adaptive housing—cost distributed pro rata**

   The Industrial Commission did not err in a workers' compensation case by distributing the cost of plaintiff's adaptive housing on a *pro rata* basis. The rent plaintiff had to pay before his injury constituted an ordinary expense of life and, thus, should have been paid by plaintiff. The change in such expense, which was necessitated by plaintiff's compensable injury, should have been compensated for by the employer.

3. **Workers' Compensation—retroactive attendant care—reimbursement timely sought**

   The Industrial Commission did not err in a workers' compensation case by awarding retroactive attendant care to plaintiff where plaintiff timely sought reimbursement for the attendant care services provided by his father and sister.

4. **Workers' Compensation—cost of life care plan—findings did not support conclusion**

   The Industrial Commission erred in a workers' compensation case by requiring defendants to pay the costs of plaintiff's life care plan. The evidence did not support the findings of fact or the conclusion that the life care plan was, in fact, a reasonably necessary rehabilitative service.

5. **Workers' Compensation—attorney fees—stubborn and unfounded litigiousness**

The Industrial Commission did not err in a workers' compensation case by failing to award plaintiff the entire cost of his attorneys' fees on grounds that defendants exhibited "a stubborn and unfounded litigiousness" throughout the case. Plaintiff offered no evidence of a stubborn or unfounded litigiousness.

6. **Workers' Compensation—Rules for Utilization of Rehabilitation Professionals in Workers' Compensation Claims—no rules violation**

The Industrial Commission erred in a workers' compensation case by concluding that the assigned nurse case managers were not operating within the Commission's Rules for Utilization of Rehabilitation Professionals in Workers' Compensation Claims ("the RP Rules") and ordering defendants to assign different nurse case managers. Assuming *arguendo* that the Commission's findings were based on competent evidence, they did not support its conclusion that the nurse case managers violated the RP Rules. Further, there was no support for the Commission's conclusion that the relationship between Paradigm and defendants conflicted with those rules.

7. **Workers' Compensation—pretrial motions—no jurisdiction—no abuse of discretion**

The Industrial Commission did not err in a workers' compensation case by denying Paradigm's motions for reconsideration, to present additional evidence, and to intervene. Paradigm filed these motions after plaintiff had already filed his notice of appeal so the Commission lacked jurisdiction to issue a ruling on those motions. Furthermore, the Commission did not err in denying Paradigm's motion for an advisory opinion as the decision to decline to give one was entirely reasonable.

8. **Appeal and Error—record insufficient**

The record was insufficient in a workers' compensation case to address Paradigm's remaining arguments on appeal.

Appeal by Plaintiff, Defendants, and Paradigm from opinion and award entered 6 November 2012 by the North Carolina Industrial Commission. Appeal by Paradigm from orders entered 28 November 2012 and 4 January 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 14 and 28 August 2013.

ESPINOSA v. TRADESOURCE, INC.

[231 N.C. App. 174 (2013)]

*R. James Lore for Plaintiff.*

*Hedrick Gardner Kincheloe & Garofalo, LLP, by Martha W. Surles, M. Duane Jones, and Rochelle N. Bellamy, for Defendants.*

*Womble Carlyle Sandridge & Rice, by Philip J. Mohr and Jennifer B. Lyday, for Paradigm Management Services, LLC.*

STEPHENS, Judge.

## Introduction

COA 13-220 and COA 13-466[1] involve issues surrounding the workers' compensation benefits provided to Jorge Espinosa ("Plaintiff") after he was shot while employed as a construction crew supervisor for Tradesource, Inc. ("Tradesource"). As a result of Plaintiff's admittedly compensable injury, he is a high-level paraplegic. Additional facts necessary to the discussion of the issues raised by this appeal are provided below.

### A. Procedural History

Plaintiff was injured on 13 August 2010. Tradesource and its insurer, Arch Insurance Company ("Arch"),[2] (collectively, "Defendants") admitted compensability for Plaintiff's injury on 18 January 2011 by way of an Industrial Commission Form 60. Defendants later contracted with Paradigm to manage Plaintiff's medical care.[3]

On 28 January 2011, Plaintiff filed a request for hearing and motion for emergency relief. In anticipation of that hearing, scheduled for 21 March 2011, Plaintiff listed the following issue in his pre-trial agreement with Defendants: "Should Paradigm . . . be removed from the case for conflict of interest and violation of the [North Carolina] Vocational

---

1. Because these two cases are factually and legally interconnected, we consolidate them for resolution in the same opinion. *See generally* N.C.R. App. P. 40.

2. Gallagher Bassett Services, Inc., is the third-party administrator.

3. Specifically, Paradigm was hired "to provide case management, rehabilitation[,] and vocational rehabilitation services." In return for more than two million dollars in consideration paid by Arch, Paradigm also accepted a significant share of the insurable risk. This required Paradigm "to undertake medical management responsibilities, including the payment of all medical costs." Pursuant to the contract, Paradigm would receive "the difference in the cost of rehabilitation, vocational[,] and case management services it [had] agreed to provide and the amount of the fixed sum payment it received . . . for assuming the risk of such services."

Rehabilitation Guidelines?" Counsel for Paradigm was not included in the pre-trial agreement.

A full evidentiary hearing was held on 21 March 2011.[4] Following the hearing, Plaintiff filed a written motion to remove Paradigm from the case. The motion was not served on either Paradigm or counsel for Paradigm, and the record does not reflect that Paradigm or counsel for Paradigm was otherwise notified of the motion. The deputy commissioner who heard the case filed an opinion and award one year later, on 12 March 2012, and, *inter alia*, denied Plaintiff's motion to remove Paradigm. From there, Plaintiff and Defendants appealed to the full North Carolina Industrial Commission ("the Commission"). Paradigm was not given notice of the parties' appeal and did not appear before the Commission.

The Commission filed its opinion on 6 November 2012, awarding permanent and total disability compensation to Plaintiff at a rate of $764.81 per week from the date of his injury to the end of his life, with a credit for compensation already paid. The Commission also awarded medical compensation for all injury-related conditions and retroactive payments to Plaintiff's father and sister at a rate of $14 per hour for eight hours per day, seven days per week, as compensation for the attendant care they provided from 4 February 2011 to 1 August 2011, subject to a credit for the attendant care provided by Defendants during that time. In addition, Defendants were ordered to pay for (1) ongoing attendant care services for eight hours per day, seven days per week; (2) the *pro rata* difference between Plaintiff's pre-injury rent and his post-injury rent; and (3) private transportation services at an average of two hours per day, seven days per week, for medical services and treatment, all "until further [o]rder of the . . . Commission." Further, Defendants were ordered to pay the costs for preparing Plaintiff's life care plan and to provide a medical case manager. Both parties' requests for attorneys' fees under N.C. Gen. Stat. § 97-88.1 were denied. Plaintiff's counsel was awarded 25% of the compensation due as attorneys' fees, and Defendants were ordered to pay costs. Both parties appealed.

Regarding Paradigm, the Commission denied Plaintiff's motion to remove it from the case and "ordered that this matter be referred to the North Carolina Department of Insurance [("the DOI")] to investigate whether Paradigm . . . [is] properly operating under North Carolina law . . . ." Paradigm alleges on appeal that it was not served with a copy of the Commission's 6 November 2012 opinion and award.

---

4. The record does not reflect that Paradigm received notice of this hearing.

ESPINOSA v. TRADESOURCE, INC.

[231 N.C. App. 174 (2013)]

Plaintiff filed his notice of appeal from the Commission's 6 November 2012 opinion and award on 14 November 2012, and Defendants filed their notice of appeal on 7 December 2012. On 15 November 2012, one day after Plaintiff's notice of appeal was received by the Commission, Paradigm filed a motion to intervene, to present additional evidence, and for reconsideration. Plaintiff filed a motion to dismiss Paradigm's motions the next day. The Commission dismissed Paradigm's motions on 28 November 2012, stating as grounds that Plaintiff had already filed his notice of appeal to this Court and the Commission lacked jurisdiction to review the motions. On 5 December 2012, Paradigm sent an e-mail to the Commission again requesting reconsideration and asking "what actions [the Commission] would have taken on [Plaintiff's motion to dismiss] if the notice of appeal had not been filed [by Plaintiff]." On 4 January 2013, the Commission denied Paradigm's second motion for reconsideration and its request for an advisory opinion. On 17 January 2013, Paradigm filed notice of appeal from the Commission's 6 November 2012 opinion and award, as well as its 28 November 2012 and 4 January 2013 orders.

Shortly thereafter, on 22 January 2013, Plaintiff filed a motion to dismiss Paradigm's appeal, and the Commission denied that motion. Just over three months later, on 2 May 2013, Plaintiff filed a separate motion to dismiss Paradigm's appeal in this Court. That same day Paradigm filed a motion to intervene in COA 13-220 and/or to consolidate COA 13-220 and 13-466. Plaintiff filed a response to that motion on 7 May 2013, and this Court denied Paradigm's motion by order entered 8 May 2013. On 16 May 2013, Paradigm filed a response to Plaintiff's motion to dismiss its appeal. In the alternative, Plaintiff submitted a conditional petition for writ of certiorari. Plaintiff filed a response to Paradigm's conditional petition on 17 May 2013.

### B. Plaintiff's Motion to Dismiss

[1] In his motion to dismiss, Plaintiff argues that Paradigm's 17 January 2013 notice of appeal was "filed about 20 days too late." This argument is based on Plaintiff's assertion that Paradigm's motion for reconsideration "must necessarily be founded upon Rule 60(b)" of the North Carolina Rules of Civil Procedure. We disagree.

Plaintiff's argument is based on the following correctly stated rules: (1) An appeal from an opinion and award of the Commission must be given within thirty days of the date of such award or thirty days of receipt of notice of such award. N.C. Gen. Stat. § 97-86 (2011). (2) The procedure for such an appeal is as provided by the Rules of Appellate Procedure. *Id.* (3) When a party moves for reconsideration under Rule

60(b), the time for filing notice of appeal is not tolled. *See* N.C.R. App. P. 3(c); *Wallis v. Cambron*, 194 N.C. App. 190, 193, 670 S.E.2d 239, 241 (2008). Because the Commission may consider a motion for reconsideration in the same manner as provided under Rule 60(b), *Hogan v. Cone Mills Corp.*, 315 N.C. 127, 337 S.E.2d 477 (1985), Plaintiff assumes that Paradigm's motion was filed pursuant to Rule 60(b) and, therefore, insufficient to toll the thirty-day time period for filing notice of appeal. This is incorrect.

Noting that "[t]he Rules of Civil Procedure are not strictly applicable to proceedings under the Workers' Compensation Act" ("the Act"), our Supreme Court has stated that, while the Commission's power to set aside judgments on a motion for reconsideration "is analogous" to the power granted trial courts under Rule 60(b)(6), it arises from a different source — "the judicial power conferred on the Commission by the legislature . . . ," not the North Carolina Rules of Civil Procedure. *Id.* at 137, 337 S.E.2d at 483 ("[W]e find no counterpart to Rule 60(b)(6) in the Act or the Rules of the Industrial Commission."). Accordingly, Paradigm's motion for reconsideration and the Commission's denial of that motion did not arise under the authority of Rule 60(b), and our cases interpreting Rule 60(b) are not directly applicable. Therefore, in order to determine whether Paradigm's notice of appeal was timely, we must look to the Commission's own rules and the cases interpreting those rules. *See id.; see also* N.C. Const. art. IV, § 3 ("The General Assembly may vest in administrative agencies established pursuant to law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created.").

Industrial Commission Rule 702 states:

> (a) Except as otherwise provided in N.C. Gen. Stat. § 97-86, in every case appealed to the North Carolina Court of Appeals, the Rules of Appellate Procedure shall apply. *The running of the time for filing and serving a notice of appeal is tolled as to all parties by a timely motion filed by any party* to amend, to make additional findings[,] or *to reconsider the decision,* and the full time for appeal commences to run and is to be computed from the entry of an [o]rder upon any of these motions, in accordance with Rule 3 of the Rules of Appellate Procedure.

4 N.C. Admin. Code 10A.0702 (2012) (amended effective 1 January 2011) (emphasis added). In an unpublished decision of this Court, we

recognized the deference given to the Commission in the application of its own rules of procedure, stating unequivocally that "the time for filing notice of appeal is tolled when a timely motion for reconsideration is filed." *Allender v. Starr Elec. Co., Inc.*, __ N.C. App. __, 734 S.E.2d 139 (Nov. 6, 2012) (unpublished disposition), *available at* 2012 WL 5395036. Though an unpublished opinion has no binding precedential value, the *Allender* Court correctly acknowledged the application of Rule 702 in that case, and we enforce it here. Accordingly, Paradigm's motion for reconsideration tolled the filing period for its notice of appeal, which was filed well within thirty days of the Commission's 4 January 2013 order. Therefore, Plaintiff's motion to dismiss is denied, and Paradigm's conditional petition for writ of *certiorari* is dismissed.

### Discussion

Our review of an opinion and award of the Commission is "limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Richardson v. Maxim Healthcare/ Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (citations omitted). The Commission's conclusions of law are fully reviewable on appeal. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 290 S.E.2d 682 (1982). "If the finding of fact is essentially a conclusion of law, however, it will be treated as a conclusion of law which is reviewable [*de novo*] on appeal." *Bowles Distrib. Co. v. Pabst Brewing Co.*, 69 N.C. App. 341, 344, 317 S.E.2d 684, 686 (1984).

*Section I* includes an analysis of most of the issues raised by Plaintiff and Defendants on appeal. It does not, however, address Plaintiff's argument that the Commission should have removed Paradigm from the case or Defendants' argument that the Commission erred in determining that the rehabilitation professionals were acting as insurance adjusters in violation of its rules. Those questions are considered in *Section II* of this opinion, which focuses on the issues relating to Paradigm.

### I. Plaintiff's and Defendants' Appeals

On appeal, Plaintiff and Defendants both contest the Commission's award of *pro rata* adaptive housing to Plaintiff. Defendants also argue that the Commission erred by granting payment for retroactive attendant care and by requiring Defendants to pay the cost of Plaintiff's life care plan. In addition, Plaintiff asserts that the Commission erred by failing to award him "all of the cost of [his a]ttorneys' fees." We affirm the Commission's awards of *pro rata* adaptive housing, retroactive

attendant care, and attorneys' fees and reverse its award of the cost of Plaintiff's life care plan.

## A. Adaptive Housing

[2] Both parties argue on appeal that the Commission erred by distributing the cost of adaptive housing on a *pro rata* basis. Plaintiff contends that the Commission erred in reducing his award by the amount he paid in rent before his injury, and Defendants argue that the Commission erred in requiring them to pay any cost beyond those necessary to make Plaintiff's apartment accessible. We affirm the Commission on this issue.

In its 6 November 2012 opinion and award, the Commission found the following pertinent facts:

42.    . . . Prior to Plaintiff's injury, . . . . [h]e shared a rental house with three other individuals, one of whom was his father. His *pro rata* share of the rent was $237.50 per month. As a result of his injury, Plaintiff requires increased livable square footage to accommodate his wheelchair and other medical supplies. Plaintiff's pre-injury shared living arrangement is no longer available and would not be suitable for his current condition.

43.    Neither before[] nor since his injury[] has Plaintiff owned any real property that could be adapted to accommodate his current condition. [T]he handicap[ped-] accessible apartment[] in which Plaintiff currently resides . . . at a monthly rental rate of $881.00[] reasonably fulfills Plaintiff's need for wheelchair[-]accessible, handicapped adaptive housing . . . .

44.    [I]t is reasonable under the circumstances for Defendants to pay the difference between Plaintiff's pre-injury rent and his post-injury cost in renting wheelchair[-]accessible, handicapped adaptive housing from the time he first moved into his own rented housing . . . . on or about February 4, 2011.

(Italics added). The Commission also came to the following conclusions:

7.    As a direct result of his compensable injury . . . , Plaintiff is a paraplegic and requires wheelchair[-] accessible, handicapped adaptive housing located in a reasonably safe community and in reasonable

proximity to family, friends[,] and medical providers to provide relief and lessen his functional disability from his injury. Plaintiff is entitled to be furnished at Defendants' expense such wheelchair[-]accessible, handicapped adaptive housing. Since Plaintiff owns no real property capable of being adapted to suit his current needs, Defendants may fulfill their obligation to furnish Plaintiff with such wheelchair[-] accessible, handicapped adaptive housing through a suitable rented apartment. Plaintiff's current rental apartment is reasonable. N.C. Gen. Stat. § 97-25; *Derebery v. Pitt [Cnty. Fire Marshall]*, 318 N.C. 192, 347 S.E.2d 814 (1986).

8.    It would be reasonable under the circumstances for Defendants to pay the difference between Plaintiff's pre-injury rent and post-injury rent dating back from the time he . . . first moved into private, adaptive housing following his August 13, 2010 work injury. N.C. Gen. Stat. § 97-25; *Derebery*[, 318 N.C. at 203, 347 S.E.2d at 821]; *Timmons*[ *v. N.C. Dep't of Transp.*], 123 N.C. App. 456, 462, 473 S.E.2d 356, 359 (1996), *affirmed per curiam*, 346 N.C. 173, 484 S.E.2d 551 (1997).

Given those findings and conclusions, the Commission awarded Plaintiff "the difference between Plaintiff's pre-injury rent of $237.50 and his post-injury rent for handicap[ped] adaptive housing until further [o]rder of the Commission."

At the time of Plaintiff's injury, N.C. Gen. Stat. § 97-25 provided in pertinent part that

[m]edical compensation shall be provided by the employer. In case of a controversy arising between the employer and employee relative to the continuance of medical, surgical, hospital, or other treatment, the [Commission] may order such further treatments as may in the discretion of the Commission be necessary.

2005 N.C. Sess. Laws ch. 448, § 6.2. "Medical compensation" was defined at that time as

medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably

**ESPINOSA v. TRADESOURCE, INC.**

[231 N.C. App. 174 (2013)]

be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability . . . .

1991 N.C. Sess. Laws Ch. 703, § 1.

The controlling Supreme Court opinion in this case is *Derebery v. Pitt Cnty. Fire Marshall*, 318 N.C. 192, 347 S.E.2d 814 (1986). In *Derebery*, the plaintiff lived with his parents before and after his injury. *Id.* at 194, 347 S.E.2d at 816. The plaintiff did not have any property of his own. *See id.* Because the owner of the parents' home refused to allow it to be adapted for the plaintiff's use, the Commission concluded that "[the d]efendant should furnish [the] plaintiff with a completely wheelchair-accessible place to live and provide all reasonable and necessary care for [the] plaintiff's well-being," including "an appropriate place for [the] plaintiff to live in view of his condition." *Id.*

On appeal to this Court, we held "that the provision of [section] 97-29[5] requiring payment for 'other treatment or care' cannot be reasonably interpreted to extend the [defendant's] liability to provide a residence for an injured employee." *Id.* at 193, 347 S.E.2d at 815 (citation, certain quotation marks, ellipsis, and brackets omitted). The Supreme Court reversed that holding on grounds that the statutory duty to provide "other treatment or care" can be reasonably construed to include the duty to "furnish alternate housing." *Id.* at 199, 347 S.E.2d at 818. Describing the Act as remedial legislation, which should be construed liberally, our Supreme Court ruled that "an employer must furnish alternate, wheelchair-accessible housing to an injured employee where the employee's existing quarters are not satisfactory and for some exceptional reason structural modification is not practicable." *Id.* at 203, 347 S.E.2d at 821.

Dissenting from the majority opinion in *Derebery*, Justice Billings offered the following additional analysis:

The . . . Act provides disability compensation as a substitute for lost wages. That substitute for wages is the employer's contribution to those things which wages

---

5. We have determined that the *Derebery* Court's interpretation of section 97-29 is applicable to section 97-25. *Timmons v. N.C. Dep't of Transp.*, 123 N.C. App. 456, 461, 473 S.E.2d 356, 359 (1996) ("In our view, the words 'and other treatment' contained in [section] 97-25 are susceptible of the same broad construction accorded the similar language of [section] 97-29 by the Supreme Court in *Derebery* . . . ."), *affirmed per curiam*, 346 N.C. 173, 484 S.E.2d 551 (1997).

ordinarily are used to purchase — food, clothing, *shelter*, etc. There is no provision in the . . . Act for the employer, in addition to providing the statutory substitute for wages, to provide the ordinary necessities of life, although in addition to weekly compensation based upon the employee's wages the employer must provide compensation for "reasonable and necessary nursing services, medicines, sick travel, medical, hospital, and other treatment or care or rehabilitative services [under section 97-29[6]]." To construe "other treatment or care" to include basic housing is not a "liberal construction" . . . of the statute; it is clearly a misconstruction. If housing is the kind of "treatment or care" intended by the statute, are not food, clothing and all of the other requirements for day-to-day living equally necessary for the employee's "treatment or care"? In the context of the [Act], the "treatment or care or rehabilitative services" clearly relate to those necessitated by the employee's work-related injury.

*Id.* at 205–06, 347 S.E.2d at 822 (Billings, J., dissenting) (citations and certain brackets omitted; emphasis in original).

We applied the *Derebery* opinion ten years later in *Timmons*, 123 N.C. App. at 456, 473 S.E.2d at 356. The plaintiff in that case, like the plaintiff in *Derebery*, was a paraplegic who lived with his parents. *Id.* at 458, 473 S.E.2d at 357. After the plaintiff's injury, the defendant paid to modify his parents' home to make it accessible for the plaintiff's use. *Id.* at 458, 473 S.E.2d at 357. The plaintiff later moved to a handicapped-accessible apartment where he lived for approximately eight and a half years. *Id.* When the rent increased, the plaintiff moved back to his parents' home. *Id.* Unlike *Derebery*, the plaintiff in *Timmons* eventually returned to full-time employment with the defendant, purchased land, and requested that the defendant finance the construction of a new, handicapped-accessible home. *Id.* at 458–59, 473 S.E.2d at 357–58. The Commission held that the plaintiff was entitled to financial assistance and ordered the defendant to pay, pursuant to section 97-25, the expense of rendering the plaintiff's new home handicapped accessible. *Id.* at 459, 473 S.E.2d at 358. The defendant appealed. *Id.*

---

6. Section 97-29 no longer contains the quoted language. As noted in footnote 6, the controlling language for the purposes of this case can be found *supra* in the version of section 97-25 that was in effect at the time of Plaintiff's injury.

On appeal, this Court determined that "the Commission's finding [—] that the accommodations at [the] plaintiff's parents' home [were] no longer suitable [—] support[ed] its conclusion that [the] plaintiff [was] entitled to have [the] defendant pay for adding to [the] plaintiff's new home those accessories necessary to accommodate [the] plaintiff's disabilities." *Id.* at 461, 473 S.E.2d at 359 (internal quotation marks omitted). "We [did] not agree with [the] plaintiff, however, that *Derebery* require[d the] defendant to pay the *entire cost* of constructing [the plaintiff's] residence." *Id.* (emphasis added). Instead, we concluded that,

> [while] the expense of housing is an ordinary necessity of life, to be paid from the statutory substitute for wages provided by the [Act, t]he costs of modifying such housing . . . to accommodate one with extraordinary needs . . . is not an ordinary expense of life for which the statutory substitute [for] wage is intended as compensation.

*Id.* at 461–62, 473 S.E.2d at 359. The Supreme Court affirmed that decision *per curiam. Timmons v. N.C. Dep't of Transp.*, 346 N.C. 173, 484 S.E.2d 551 (1997).

On appeal in this case, Defendants assert that Plaintiff's adaptive housing is an "ordinary expense[] of life [which] Plaintiff is required to pay out of his weekly benefits." Relying on the language in *Timmons*, "Defendants contend their only legal obligation under the [Act] regarding housing is to provide Plaintiff with modifications to his housing as required by his disability, which they have done." Plaintiff responds that this is a misreading of the law. At oral argument, Plaintiff asserted that the dissent authored by Justice Billings in *Derebery* and this Court's opinion in *Timmons* should be construed as the general rule in these matters, while the Supreme Court's opinion in *Derebery* should be construed as an exception to that rule. In his brief, Plaintiff articulated his interpretation of those opinions in the following way:

> . . . If an injured worker already owns a dwelling . . . that is capable of being . . . adapted for [handicapped] use, given the nature of the worker's particular injury, the employer . . . is only required to pay for the cost of the handicapped modifications . . . [.] But if the injured worker at the time of injury owns no dwelling . . . or does not own one capable of being . . . adapted [for handicapped use,] the employer . . . must "provide[,]" at its expense, . . . the worker with the entire handicapped-adapted dwelling . . . .

Plaintiff contends that this case falls firmly under the alleged *Derebery* exception and that Defendants must therefore pay the entire rent for his adapted apartment home. We find neither party's argument persuasive and affirm the Commission's *pro rata* determination in its entirety.

As a preliminary point, we note that the parties' arguments assume rules that are rigid and broadly applicable in the cases discussed above. A reading of section 97-25 makes it clear, however, that an award of "other treatment" is in the discretion of the Commission. 2005 N.C. Sess. Laws ch. 448, § 6.2 ("[T]he [Commission] may order such further treatments as may in the discretion of the Commission be necessary."). Section 97-2(19), as written at the time of Plaintiff's injury, further explained that the *type* of medical compensation the employer must pay is *"in the judgment of the Commission"* as long as it is "reasonably . . . required to effect a cure or give relief." 1991 N.C. Sess. Laws Ch. 703, § 1. The Supreme Court's decision in *Derebery* and our own decision in *Timmons* represent the outer limits of the Commission's authority under those statutes, not entirely new rules to be followed in place of or in addition to the statutes created by our legislature.

In this case, the Commission determined that Defendants should pay the *pro rata* difference between the rent required for Plaintiff's new, handicapped-accessible home and the rent Plaintiff had to pay as an ordinary expense of life before his injury. The Commission sensibly reasoned that living arrangements constitute an ordinary expense of life and, thus, should be paid by the employee. The Commission also recognized, however, that a change in such an expense, which is necessitated by a compensable injury, should be compensated for by the employer. Because Plaintiff did not own his own home in this case, he was required to find new rental accommodations that would meet his needs. In this factual circumstance, it was appropriate for the Commission to require the employer to pay the difference between the two.

While circumstances may occur in which an employer is required to pay the entire cost of the employee's adaptive housing, neither the Supreme Court's opinion in *Derebery* nor our holding in *Timmons* support Plaintiff's assertion that such a requirement is necessary *whenever* an injured worker does not own property or a home. Such a ruling would reach too far. For the above reasons, both parties' arguments are overruled, and the Commission's opinion and award as to this issue is affirmed.

ESPINOSA v. TRADESOURCE, INC.

[231 N.C. App. 174 (2013)]

*B. Retroactive Attendant Care*

[2] Relevant to the issue of retroactive attendant care, the Commission found that, as a result of his injury, Plaintiff was not fully independent and required assistance. Specifically, the Commission found that:

> 8.   . . . [Plaintiff] is weak in the torso causing trunk balance problems, making him at risk for falls, especially during transfers to the bed, wheelchair, bathtub and toilet, and when engaging in his bowel program[,] which requires the administration of suppositories and leaning forward on the toilet. As a result of his injury, Plaintiff also has pain, leg spasticity, fatigue and shortness of breath due to his lung injury, and depression[,] which was significantly aggravated by his paraplegia.

Shortly after his injury, Plaintiff was cared for in a hospital. He was later moved to a rehabilitation center in Georgia. On 4 February 2011, Plaintiff was discharged from the rehabilitation center. When he inquired about whether he would begin to receive attendant care, he was informed that he would have to get a prescription for treatment from his Georgia-based treating physician, Dr. John Lin.

Plaintiff did not have a consultation with Dr. Lin and was discharged without a provision for attendant care services. Nonetheless, a report from the rehabilitation center "indicated that Plaintiff was not fully independent and that he continued to require assistance . . . with his mobility, specifically assistance with transferring from his wheelchair to his bed, tub, toilet[,] and car and that he continued to require supervision due to his spasticity level."

After Plaintiff was discharged from the rehabilitation center, he moved into a private home in Georgia. He was cared for by his father, who left his job to stay with Plaintiff, and his sister, who came from Mexico to assist her brother. During that time, Plaintiff's father and sister

> continued to provide [Plaintiff] with the same type of daily attendant care services that they had previously provided to him during his stay at the [rehabilitation center], including assisting him with his daily bowel program and internal catheterization program, transferring him to and from his wheelchair to his bed, the tub, toilet, and car, assisting with bathing and dressing, and performing other daily chores such as shopping for household needs and cooking.

These services were provided from approximately 9:00 a.m. to 11:00 p.m. each day.

Plaintiff's sister returned to Mexico on 5 March 2011. Plaintiff's father remained with Plaintiff as his sole caretaker. On 16 March 2011, Dr. Lin ordered professional attendant care for Plaintiff until Plaintiff could get an outpatient therapy evaluation. Defendants began providing attendant care on 17 March 2011 for two hours in the morning and two hours in the evening.

Plaintiff moved to North Carolina a few months later. On 11 July 2011, Dr. Lin issued discharge instructions, ordering that attendant care services be discontinued because "Plaintiff was functioning independently with his activities of daily living and mobility." Though Plaintiff's medical case manager asked Dr. Lin to reconsider that decision, he refused.

On 28 March 2011, Plaintiff presented himself for a medical evaluation concerning the transfer of his care from Georgia to North Carolina. His new, Charlotte-based doctor, Dr. William Bockenek, disagreed with Dr. Lin regarding attendant care and prescribed professional attendant care for eight hours per day, seven days per week.[7] Defendants began providing attendant care for Plaintiff at those requirements, beginning 1 August 2011. Dr. Bockenek also opined that Plaintiff needed eight hours of attendant care per day dating back to his 4 February 2011 discharge from the rehabilitation center.

In its 6 November 2012 opinion and award, the Commission stated that it gave "greater weight to the opinions of Dr. Bockenek over those of Dr. Lin on Plaintiff's attendant care needs." It also concluded that:

> 3.    Plaintiff has been entitled to daily retroactive and ongoing attendant care services provided at Defendants' expense for eight hours per day since his discharge from the [rehabilitation center] . . . . *Attendant care reimbursement for services previously provided by family members are* [sic] *recoverable*. Although the Court of Appeals issued an opinion that prior approval of attendant care services must be obtained before family members can be reimbursed in *Mehaffey v. Burger King* . . . , __ N.C. App. __, 718 S.E.2d 720

---

7. Dr. Bockenek also prescribed an additional two hours of attendant care each day for community transport, which the Commission concluded was "in addition to the eight hours of [services] Plaintiff require[d.]"

(2011), the Supreme Court of North Carolina issued a stay of the *Mehaffey* decision in January 2012.

4.   Plaintiff's father and his sister provided eight hours of attendant care per day for Plaintiff during the periods when Defendants provided no care. During the periods when Defendants provided some care through a commercial agency, but less than eight hours per day, Plaintiff's father and sister provided the balance of the eight hours of care that Plaintiff required. The attendant care provided to Plaintiff by his father and sister was medically necessary and reasonably required to give relief and lessen his disability. *Plaintiff timely sought reimbursement for these attendant care services.* . . . Defendants are obligated to pay for the attendant care services provided to Plaintiff by his father and sister.

(Emphasis added). Therefore, the Commission ordered Defendants to reimburse Plaintiff's father and sister for the attendant care they had provided to Plaintiff and to continue providing attendant care services for eight hours per day until further notice.

Defendants argue on appeal that the Commission erred in awarding retroactive attendant care to Plaintiff, citing an opinion of this Court from 2011 in *Mehaffey v. Burger King*, __ N.C. App. __, 718 S.E.2d 720 (2011). In that case, the plaintiff's wife provided him with care for approximately nine months. *Id.* at __, 718 S.E.2d at 722. Afterward, a nurse consultant with the Commission recommended that the defendants compensate the plaintiff with eight hours of daily attendant care for five days each week. *Id.* The defendants did not authorize such care beforehand. *Id.* About ten months after the plaintiff's wife stopped attendant care, the plaintiff's family physician recommended sixteen hours of attendant care services per day, retroactive to the date of his original diagnosis. *Id.* In its opinion and award, the Commission gave the most weight to the family physician and awarded compensation for the plaintiff's wife's past and future attendant care. *Id.* at __, 718 S.E.2d at 722–23.

On appeal, we reversed the Commission's award because the attendant care provided by the wife had not been *pre-approved* in accordance with the Commission's medical fee schedule. *Id.* That opinion was reversed by our Supreme Court on 8 November 2013. *Mehaffey v. Burger King*, __ N.C. __, __, __ S.E.2d __, __ (2013), available at 2013

WL 5962846 [hereinafter *Mehaffey II*]. In reversing this Court's opinion, our Supreme Court stated:

> [O]ur [g]eneral [s]tatutes [do] not give the Commission the authority to mandate that certain attendant care service providers may not be compensated unless they first obtain approval from the Commission before rendering their assistance. As a result, we are unable to permit [the medical fee schedule] to prevent the award of retroactive compensation for the attendant care services [the wife] provided her husband.

*Id.* at __, __ S.E.2d at __ (citation omitted). Instead of affirming the Commission's original award, however, the Court pointed out that "an injured worker is required to obtain approval from the Commission within a reasonable time after he selects a medical provider." *Id.* Accordingly, the Court stated that the plaintiff was only entitled to reimbursement for the attendant care services provided by his wife if he sought approval from the Commission within a reasonable period of time. *Id.* Because it was unclear from the record whether that had occurred, the Court remanded the matter for further findings of fact and conclusions of law by the Commission. *Id.*

Given the opinion of our Supreme Court, Defendants' argument is meritless. *See id.* Unlike *Mehaffey II*, the record in this case reflects the Commission's finding and conclusion that "Plaintiff timely sought reimbursement for [the] attendant care services [provided by his father and sister]." This determination is not disputed by the parties. Accordingly, we affirm the Commission's opinion and award on the issue of retroactive attendant care pursuant to our Supreme Court's opinion in *Mehaffey II*.

### C. Cost of Life Care Plan

[4] As noted above, the employer in workers' compensation cases

> is required to provide the injured employee with medical compensation, which includes "medical, surgical, hospital, nursing, and *rehabilitative services* . . . as may reasonably be required to effect a cure or give relief." [1991 N.C. Sess. Laws Ch. 703, § 1] (emphasis [added]); [2005 N.C. Sess. Laws ch. 448, § 6.2]. The . . . Commission has discretion in determining whether a rehabilitative service will effect a cure, give relief, or will lessen a claimant's period of disability.

*Scarboro v. Emery Worldwide Freight Corp.*, 192 N.C. App. 488, 495, 665 S.E.2d 781, 786–87 (2008) (citation, internal quotation marks, and certain ellipses omitted). In addition, when reviewing an opinion and award of the Commission, we are "limited to a consideration of whether there [is] any competent evidence to support the . . . Commission's findings of fact and whether [those] findings . . . support the Commission's conclusions of law." *Ard v. Owens-Illinois*, 182 N.C. App. 493, 496, 642 S.E.2d 257, 259 (2007) (citation, internal quotation marks, and emphasis omitted).

In this case, Defendants assert that the Commission erred in requiring them to pay the costs of Plaintiff's life care plan and contest findings of fact 32, 33, and 34 as insufficient to support its 11th conclusion of law. The Commission's findings state in pertinent part as follows:

32.  . . . [T]he cost of preparation of the [life care plan] . . . was a reasonable rehabilitative service as it was medically necessary to comprehensively evaluate and identify the essential medical needs of Plaintiff as a result of his catastrophic injuries. The [life care plan] was essential to ensure appropriate treatment, care, transportation[,] and living accommodations [were] provided in order to give needed relief from symptoms associated with Plaintiff's injuries and to prevent further deterioration in his condition[,] which could otherwise become life threatening. Moreover, the majority of the recommendations and items identified . . . in the [life care plan] . . . have been put in place. The [life care plan] . . . is reasonably and medically necessary to provide relief and lessen Plaintiff's disability considering the circumstances of this case, including the Paradigm contract. Defendants are obligated to pay for the preparation of this [p]lan.

33.  [An itemized, numbered table was prepared in the life care plan], listing the current and future needs of Plaintiff as a result of his injury. . . . Except for items 64–66 and 68, the . . . Commission finds that the items listed in the [life care plan] are medically necessary or have the potential to become medically necessary in the future[;] however, [certain items] are projected future needs and may be revised, items . . . related to the power wheelchair are not expected to be needed until 2035 and items . . . related to prescribed

medications are subject to change periodically. If not already provided, Defendants are obligated to provide Plaintiff with the items listed as 1–63, unless Plaintiff specifically rejects the listed item, a medication or medical service is revised by a treating medical provider, or the item is a future need. . . .

34. Dr. Bockenek opined and the . . . Commission [finds] as fact that the recommendations he provided . . . to develop Plaintiff's [life care plan] were reasonably necessary.

Given those findings, the Commission concluded as a matter of law that:

11. The cost of preparation of the [life care plan] constitutes a reasonably necessary rehabilitative service and Plaintiff is entitled to have the costs associated with the preparation of this [plan] taxed against Defendants. Plaintiff is also entitled to be provided those items listed and found in the above findings of fact to be reasonably or medically necessary from [the life care plan]. . . .

In support of this conclusion, the Commission cited to 1991 N.C. Sess. Laws Ch. 703, then known as N.C. Gen. Stat. § 97-2(19); 2005 N.C. Sess. Laws ch. 448, § 6.2, then known as N.C. Gen. Stat. § 97-25; and *Scarboro*, 192 N.C. App. at 488, 665 S.E.2d at 781.

In *Scarboro*, we affirmed the Commission's tax of the costs of the plaintiff's life care plan as against the defendants because the plaintiff's doctor opined that the life care plan was reasonable and "medically necessary" for the plaintiff. *Id.* at 496, 665 S.E.2d at 787. In so holding, we determined that the doctor's opinion constituted competent evidence sufficient to support the Commission's conclusion that the life care plan was a "reasonable rehabilitative service." *Id.* For that we reason, we affirmed the Commission's opinion and award on that issue. *Id.*

Following the Commission's opinion and award in this case, Commissioner Tammy Nance offered the following dissenting opinion on the issue of the allocation of the costs of Plaintiff's life care plan:

. . . Dr. Bockenek, the authorized treating physician who specializes in treating patients with spinal cord injuries, is perfectly capable of prescribing Plaintiff's medical needs as they arise, and as they change, which they will. As Dr. Bockenek explained in his deposition, patients with

ESPINOSA v. TRADESOURCE, INC.

[231 N.C. App. 174 (2013)]

spinal cord injuries progress at different levels. There will be variability in what Plaintiff needs as his functional abilities improve with treatment and therapy, or decline with age. Dr. Bockenek testified that he could not say that Plaintiff was going to need everything that was on [the] life care plan. He said that everything that was in the life care plan was reasonable and necessary "for some patient with a spinal cord injury," but with respect to Plaintiff specifically, and what Plaintiff might need over his lifetime, it was "a guess, an estimate." According to Dr. Bockenek, he bases his treatment recommendations on his clinical assessment, not some "[c]onsortium for [s]pinal [c]ord [m]edicine" guidelines.

A life care plan is a useful litigation tool when the parties are trying to settle a catastrophic claim and want a projection and cost analysis of future medical needs. I do not believe it is a component of medical compensation within the meaning of N.C. Gen. Stat. § 97-2(19) or N.C. Gen. Stat. § 97-25, and I do not believe that it was reasonable and necessary in this case to effect a cure, give relief, or lessen the period of Plaintiff's disability. I believe that Dr. Bockenek, with input from Plaintiff, the medical case manager, and the health care workers who attend to Plaintiff on a daily basis, can make recommendations for Plaintiff's care and prescribe for his needs as they arise and change, without resorting or referring to a life care plan.

On appeal, Defendants contest the Commission's findings of fact as not based on competent evidence and request that we adopt Commissioner Nance's dissenting opinion. In response, Plaintiff contends that "the preparation of a life care plan may be considered to be a necessary service in a workers' compensation action . . . when it is deemed 'necessary as a result of the injuries suffered by [the] plaintiff,' " citing an unpublished opinion of this Court.[8] Plaintiff goes on to assert, without citing any authority, that "[w]hether a life care plan is 'necessary as a result of the injuries suffered' is a question of fact for the . . . Commission to decide based on all the competent evidence of record and any reasonable inferences from this evidence." Beyond that, Plaintiff petitions this Court to affirm the Commission's award as

8. Unpublished opinions lack any precedential value and are not controlling on subsequent panels of this Court. N.C.R. App. P. 30(e).

a matter of policy, noting that the costs of preparing a life care plan are expensive and should not be imposed on injured workers who often lack the financial resources of their employers. We find Plaintiff's arguments unpersuasive, reverse the opinion and award of the Commission, and adopt the dissenting opinion of Commissioner Nance.

Plaintiff's argument that a life care plan is a "necessary service" is without merit. Plaintiff relies on no binding authority for that point, and we are unable to find any. If the Commission's conclusion of law is to be upheld on this issue, it must be because that conclusion is adequately supported by its own findings of fact, which must in turn be supported by competent evident. *See Ard*, 182 N.C. App. at 496, 642 S.E.2d at 259. In *Scarboro*, we affirmed the Commission's conclusion that the costs of the life care plan should be imposed on the defendants because its conclusion was supported by the finding that the plaintiff's doctor had deemed the life care plan to be "reasonable and medically necessary." *Scarboro*, 192 N.C. App. at 496, 665 S.E.2d at 787.[9]

In this case, the salient features of findings of fact 32 and 33 are more properly categorized as conclusions of law.

> The classification of a determination as either a finding of fact or a conclusion of law is admittedly difficult. As a general rule, however, any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law. Any determination reached through logical reasoning from the evidentiary facts is more properly classified a finding of fact.

*See In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (citations, internal quotation marks, and certain commas omitted). By characterizing the life care plan and the items therein as reasonable and "medically necessary," findings 32 and 33 involve "the exercise of judgment [and] the application of legal principles," not a resolution of evidence. *See id.* For that reason, they constitute conclusions of law and, thus, are not competent support for the Commission's 11th identified conclusion. Nevertheless, finding of fact 34 constitutes a finding of fact because it resolves as an evidentiary matter the nature of Dr. Bockenek's opinion, *i.e.*, "that the recommendations he provided . . . to develop Plaintiff's [life care plan] were reasonably necessary." Therefore, we must determine whether finding of fact 34 supports conclusion of law 11. We hold that it does not.

---

9. Because the defendants in *Scarboro* did not contest that finding, we presumed that it was based on competent evidence. *Id.*

**ESPINOSA v. TRADESOURCE, INC.**

[231 N.C. App. 174 (2013)]

While finding of fact 34 might appear to support the Commission's conclusion that the cost of the life care plan is a reasonably necessary rehabilitative service, this is not the case. In *Scarboro,* the doctor opined that the life care plan itself was "reasonable and medically necessary," and we held that this opinion was competent to support the Commission's conclusion that the cost of the plan should be taxed to the defendants as a result. Here, however, the Commission has only determined as a matter of fact that Dr. Bockenek believed *his own* recommendations were reasonable. As Commissioner Nance pointed out in her dissent, those recommendations did not support the Commission's conclusion that the life care plan was, in fact, a reasonably necessary rehabilitative service.[10] Accordingly, we reverse the opinion and award of the Commission, taxing the costs of Plaintiff's life care plan to Defendants.

*D. Plaintiff's Attorneys' Fees*

**[5]** Citing N.C. Gen. Stat. § 97-88.1, Plaintiff contends that the Commission erred in failing to award him the entire cost of his attorneys' fees on grounds that Defendants have exhibited "a stubborn and unfounded litigiousness" throughout the case. In support of that contention, Plaintiff briefly repeats his arguments regarding adaptive housing and Paradigm.[11] "If the [D]efendants' position is a correct statement of the applicable law, [Plaintiff contends,] the result in this case would be absurd." We disagree.

Section 88.1 of the Act provides as follows:

> If the . . . Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for [the] defendant's attorney or [the] plaintiff's attorney upon the party who has brought or defended them.

N.C. Gen. Stat. § 97-88.1 (2011).

> The purpose of this section is to prevent stubborn, unfounded litigiousness, which is inharmonious with the primary purpose of the [Act] to provide compensation to injured employees. . . . The reviewing court must

---

10. Commissioner Nance's dissenting opinion, quoted above, provides an in-depth discussion of why this finding does not support the Commission's conclusion, and we see no reason to quote it again.

11. Plaintiff's arguments regarding Paradigm are discussed *infra.*

> look to the evidence introduced at the hearing in order to
> determine whether a hearing has been defended without
> reasonable ground. The test is not whether the defense
> prevails, but whether it is based in reason rather than in
> stubborn, unfounded litigiousness. If it is determined that
> a party lacked reasonable grounds to bring or defend a
> hearing before the Commission, then the decision of
> whether to make an award pursuant to [section] 97-88.1
> and the amount of the award is in the discretion of the
> Commission, and its award or denial of an award will not
> be disturbed absent an abuse of discretion.

*Chaisson v. Simpson*, 195 N.C. App. 463, 484, 673 S.E.2d 149, 164
(2009) (citations, internal quotation marks, brackets, and certain
commas omitted).

Beyond the alleged "absurdity" of Defendants' argument, Plaintiff
offers no evidence of a stubborn or unfounded litigiousness. Pursuant
to our discussions of Defendants' arguments, *supra* and *infra*, we find
no merit in this claim. Even to the extent that Defendants were legally
incorrect, we see nothing in the record to suggest that they have pro-
vided anything less than a sound and sensible defense for their clients.
Therefore, we hold that the Commission lacked the authority to tax
Defendants with attorneys' fees under section 97-88.1 and affirm the por-
tion of the Commission's opinion and award that concludes the same.

## II. Paradigm's Appeal

In addition to the arguments discussed above, Defendants appeal
on grounds that the Commission erred in determining that the assigned
nurse case managers were acting as insurance adjusters, concluding that
they were not operating within the Commission's Rules for Utilization of
Rehabilitation Professionals in Workers' Compensation Claims ("the RP
Rules"), and ordering Defendants to assign different nurse case manag-
ers under the RP Rules. Further, Plaintiff contends that the Commission
erred in failing to remove Paradigm from the case. Finally, Paradigm
makes the following arguments in its appeal: (1) the Commission erred
by denying Paradigm's motions and failing to advise how it would have
ruled; (2) the Commission's opinion and award is void because Paradigm
was a necessary party that was never made a party to the matter; (3) the
Commission erred in concluding that Paradigm was not providing ser-
vices under the RP rules; (4) the Commission erred in determining that
Paradigm had a conflict of interest; and (5) the Commission erred in
finding that Paradigm acted as a co-insurer. We reverse the Commission

on Defendants' appeal, affirm the Commission on Paradigm's first issue, and remand to the Commission for further review regarding Plaintiff's and Paradigm's remaining issues.

### A. *The Rehabilitation Professionals*

**[6]** Defendants expressly challenge the Commission's findings of fact and conclusions of law regarding the RP Rules and the assigned rehabilitation professionals.[12] Relevant to our decision in this case, the Commission's findings and conclusions are as follows:

### FINDINGS OF FACT

45. On or about December 13, 2010, [Defendants] contracted with [Paradigm] to provide case management, rehabilitation[,] and vocational rehabilitation services. In return for consideration paid . . . in the sum of $2,286,953.00, Paradigm agreed to provide not only these services but also accepted, with some exceptions, a significant share of the insurable risk in this matter. . . . Paradigm assumed financial responsibility for payment of compensable medical bills relating to Plaintiff's claim beginning August 13, 2010[,] and continuing until "all outcomes are achieved." Both Arch and Paradigm are presently acting as co-insurers.

46. The [o]utcome [p]lan [c]ontract between Arch and Paradigm outlined specific inclusions and exclusions of medical services to be provided by Paradigm . . . . The contract specifically provided [that:]

   "All medical costs related to the work injury deemed appropriate, necessary, and compensable in accordance with applicable jurisdictional statutes, from the contract start date until the targeted [o]outcome [l]evel is achieved, are included in the [o]outcome [p]lan [c]ontract price."

   . . .

47. Under its contract, Paradigm is compensated in part [for] the difference in the cost of rehabilitation, vocational[,] and case management services it has agreed

---

12. Specifically, Defendants challenge findings of fact 48–52 and conclusions of law 13–14.

to provide and the amount of the fixed sum payment it received from Arch as consideration for assuming the risk of such services. Ms. Angela Linn was assigned as network manager of the Paradigm contract.

48.  . . . Defendants contend that Paradigm has contracted with a third party, Palmetto Rehabilitation, to provide its case management services to Plaintiff and that Paradigm did not directly provide case management services to Plaintiff. Ms. Linn testified that she performed services as an employee of Palmetto Rehabilitation; however, there is no documentation in the record to corroborate her testimony on this issue.

49.  Ms. Linn has worked seven years as a contract nurse case manager/network manager for Paradigm. She testified that her primary duties as a nurse case manager/network manager for Paradigm are to coordinate and facilitate medical treatment for patients. In Plaintiff's case, Ms. Linn received a call to see if she would accept Plaintiff's case[. When she did,] she flew to [Plaintiff's location] and assessed his needs and coordinated his care transfer . . . to Atlanta, Georgia. Ms. Linn did not testify specifically [about] whether her assignment to Plaintiff's case came from Paradigm or Palmetto Rehabilitation. Once Plaintiff became a patient at the [rehabilitation center], Ms. Linn coordinated an outcome plan with other Paradigm team members and became the "eyes and ears" of the Paradigm team while Plaintiff was treated at the [rehabilitation center]. She visited Plaintiff once a week . . . , updated the Paradigm team on his progress, *authorized medical treatment and services that she felt were within the [o]utcome [p]lan [c]ontract [p]rice[,]* and coordinated and authorized housing needs and transportation for Plaintiff's family during his stay at the [rehabilitation center].

50.  In terms of authorizing medical treatment and services, *Ms. Linn testified that while working on Plaintiff's claim she had full authority to provide services that she deemed medically necessary for Plaintiff and within the [o]utcome [p]lan [c]ontract price.* In a December 9, 2010 letter, Paradigm directed

Gallagher Bassett Services to forward any communication or requests for authorization of services related to Plaintiff's claim to Ms. Linn. A January 18, 2011 e-mail from [the] claims representative with Gallagher Bassett Services[] responded to a request from a vendor for authorization for medical supplies for Plaintiff, stating that "all medical treatment and authorization need to go through Paradigm. Please contact Angela Linn with Paradigm."

51. Once [Plaintiff's] care was transferred to North Carolina, Ms. Linda Sproat . . . provided case management services to Plaintiff, such as regularly performing home assessments to determine [Plaintiff's] daily needs, [and] coordinating his personal attendant care needs and medical appointments. She also authorized medical treatment, services[,] and cost[s] for Plaintiff, including an additional six weeks of physical and occupational therapy, transportation services to and from medical appointments[,] and wall[ ]mounted lifts and grab bars for Plaintiff's bathroom.

. . .

53. Based upon a preponderance of evidence, the . . . Commission finds that that [sic] the services provided by both Ms. Linn and Ms. Sproat as network managers with Paradigm do not fit within the parameters of medical case management allowed under the [RP Rules]. While they did provide some case management services to Plaintiff, Ms. Linn and Ms. Sproat had full authority to authorize medical treatment and services that they deemed to be medically necessary, which is closer to the authority of insurance claims adjusters. They only sought authorization from the carrier if the services were not within the listed "[o]utcome [p]lan [c]ontract [p]rice."

54. Palmetto Rehabilitation is not providing services to Plaintiff under the authority of the [RP Rules]. Plaintiff would benefit from the assignment of a medical case manager operating under [the RP Rules].

55. The . . . Commission finds that despite its contract with Paradigm, Defendants . . . remained liable for all of the

compensable consequences of Plaintiff's injury. The
. . . Commission further finds that it is within the juris-
diction of the [DOI] to determine whether Paradigm is
properly operating in North Carolina on this claim and
whether the services performed by Ms. Lin [sic]
and Ms. Sproat constituted insurance claims adjusting.

. . .

## CONCLUSIONS OF LAW

. . .

13. No special contract can relieve an employer of his
[sic] obligation under the [A]ct. Therefore, despite
[Defendants'] contract with Paradigm[,] they
remained ultimately liable on this claim. Paradigm
then contracted with Palmetto Rehabilitation to pro-
vide rehabilitation and medical case management ser-
vices. *However, since Ms. Lin [sic] and Ms. Sproat
also have authority to approve or deny medical care,
they are not operating under the [RP Rules] as they,
in part, provided claims adjustment type services
and their contractual relationship conflicts with the
conduct allowed under [those] rules.*

14. Whether working for Paradigm or Palmetto
Rehabilitation, Ms. Linn and Ms. Sproat are not pro-
viding services to Plaintiff under the [RP Rules].

(Emphasis added).

In their brief, Defendants assert that Ms. Linn and Ms. Sproat (col-
lectively, "the nurse case managers") should not be removed as violat-
ing the RP Rules because, as employers, Defendants have the authority
to direct medical treatment.[13] They go on to claim that the nurse case
managers acted within the scope of the RP Rules and contend that the
Commission lacked any authority for its conclusion to the contrary.
In his brief, Plaintiff asserts that Paradigm is incentivized to minimize
its payments to Plaintiff because of its agreement with Defendants.
He also alleges that Paradigm and Arch were working together in vio-
lation of the RP Rules — citing an e-mail from Defendants to one of

---

13. This is correct. When an employer has accepted a claim as compensable, it has
the right to direct the medical treatment for that injury. *Craven v. VF Corp.*, 167 N.C. App.
612, 616–17, 606 S.E.2d 160, 163 (2004).

**ESPINOSA v. TRADESOURCE, INC.**

[231 N.C. App. 174 (2013)]

the nurse case managers, which instructed her to contact Gallagher Bassett for items not covered in the contract.[14] After a review of the RP Rules and the record in this case, we find that the nurse case managers were not in violation of the rules and reverse the opinion and award of the Commission.

In pertinent part, the RP Rules provide as follows:

*.0102 PURPOSE OF THE RULES*

>   (a) The purpose of these Rules is to foster profession-alism in the provision of rehabilitation services in Industrial Commission cases, such that in all cases the primary concern and commitment of the [Rehabilitation Professional ("RP")] is to the medi-cal and vocational rehabilitation of the injured worker rather than to the personal or pecuniary interest of the parties.

>   (b) To this end, these Rules are to be interpreted to promote frank and open cooperation among par-ties in the rehabilitation process, and to discour-age the pursuit of plans or purposes which impede or conflict with the parties' progress toward that goal.

4 N.C. Admin. Code 10C.0102 (2012) (effective 1 January 1996).

*.0103 APPLICATION OF THE RULES*

. . .

>   (d) "Medical rehabilitation" refers to the planning and coordination of health care services. The goal of medical rehabilitation is to assist in the restora-tion of injured workers as nearly as possible to the workers' pre-injury level of physical function. Medical case management may include but is not limited to case assessment, including a personal interview with the injured worker; development, implementation[,] and coordination of a care plan with health care providers and with the worker and family; evaluation of treatment results; planning

---

14. Plaintiff argues that the e-mail is revelatory of Paradigm's "carte blanch" [sic] authority to grant or deny services under its contract with Arch and through the nurse case managers.

for community re-entry; return to work with the employer of injury and/or referral for further vocational rehabilitation services.

. . .

4 N.C. Admin Code 10C.0103 (2012) (amended effective 1 June 2000).

*.0106 PROFESSIONAL RESPONSIBILITY OF THE REHABILITATION PROFESSIONAL IN WORKERS' COMPENSATION CLAIMS*

(a) The RP shall exercise independent professional judgment in making and documenting recommendations for medical and vocational rehabilitation for the injured worker, including any alternatives for medical treatment and cost-effective return-to-work options including retraining or retirement. The RP shall realize that the attending physician directs the medical care of an injured worker.

(b) The RP shall inform the parties of his or her assignment and proposed role in the case. At the outset of the case, the RP shall disclose to health care providers and the parties any possible conflict of interest, including[] any compensation carrier's or employer's ownership of or affiliation with the RP.

. . .

[(f)] Prohibited Conduct:

(1) RPs shall not conduct or assist any party in claims negotiation, investigative activities, or perform any other non-rehabilitation activity;

. . .

4 N.C. Admin. Code 10C.0106 (2012) (amended effective 1 June 2000).

*.0107 COMMUNICATION*

. . .

(f) The RP shall provide copies of all correspondence simultaneously to all parties to the extent possible, making every effort to effect prompt service.

. . .

4 N.C. Admin. Code 10C.0107 (2012) (amended effective 1 June 2000).

In its opinion and award, the Commission determined that the nurse case managers violated the RP Rules for two reasons: (1) they were given the authority to *approve or deny* payment for medical care within the auspices of the contract plan, which constituted unpermitted "claims adjustment type services," and (2) the contractual relationship between Paradigm and Defendants "conflict[ed] with the conduct allowed under [the] Rules." Assuming *arguendo* that the Commission's findings are based on competent evidence, they do not support its conclusion that the nurse case managers violated the RP Rules.[15]

First, to the extent that there is competent evidence to support the Commission's finding regarding the nurse case managers' medical care authority, the Commission has not offered any reason why the existence of this authority is a violation of the RP Rules. The RP Rules cited by Plaintiff only state that rehabilitation professionals must exercise "independent professional judgment" — they do not address medical care authority. Further, accepting for the purposes of argument that such authority constitutes "claims adjustment type services,"[16] as the Commission characterizes it, that type of activity is not specifically barred by the RP Rules.

Rule .0106(f) prohibits RPs from "claims negotiation, investigative activities, or . . . any other non-rehabilitation activity." However, neither the Commission's opinion nor the Plaintiff's brief offers any reason that the nurse case managers' approval of payment for certain medical treatment, which was *already approved under the outcome plan contract*, should constitute "claims negotiation" or "investigative activities," and we see no such reason. Further, the Commission made no finding regarding whether the nurse case managers' actions in approving payment for certain treatments constituted a "non-rehabilitation activity." In our view, approving medical treatment, when the provider requires approval before proceeding with treatment, constitutes "assist[ing] in the restoration of injured workers as nearly as possible to the workers' pre-injury level of physical function[,]" 4 N.C. Admin Code at 10C.0103(d), *particularly when*, as here, the RP is simply and solely communicating the authorization already in effect, and not making an independent judgment about whether the treatment should be approved.

---

15. At no point in its opinion and award does the Commission establish what specific language or which specific rules were violated.

16. We do not offer an opinion as to whether it does.

Second, neither Plaintiff nor the Commission provide any support for the Commission's conclusion that the relationship between Paradigm and Defendants "conflict[ed]" with those rules. Indeed, we find none. Accordingly, we reverse the Commission's opinion and award as it relates to the nurse case managers.

### B. Paradigm's Motions

**[7]** As discussed above, Paradigm moved to intervene, to receive additional evidence, and for reconsideration following the Commission's 6 November 2012 opinion and award. The Commission dismissed those motions on 28 November 2012 for lack of jurisdiction because Plaintiff had already filed notice of appeal. Afterward, Paradigm filed a second motion for reconsideration and for an advisory opinion, and the Commission denied those motions as well. On appeal, Paradigm argues that the Commission erred in dismissing those motions. We disagree.

#### i. Paradigm's Original Motions

It is well established that, as a general rule, "an appeal takes a case out of the jurisdiction of the trial court" and, thereafter, the court is *functus officio. Sink v. Easter*, 288 N.C. 183, 197, 217 S.E.2d 532, 541 (1975) (citations omitted). Because Paradigm filed its motions after Plaintiff had already filed his notice of appeal, the Commission lacked jurisdiction to issue a ruling on those motions. As Plaintiff notes in his brief, Paradigm admitted to this fact in its response to Plaintiff's motion to dismiss. We hold that the Commission correctly denied Paradigm's original motions for reconsideration, to present additional evidence, and to intervene, and we affirm its 28 November 2012 order on those grounds.

#### ii. Paradigm's Second Set of Motions

Alternatively, Paradigm contends that the Commission abused its discretion in denying Paradigm's request for an advisory opinion and second motion for reconsideration. For support, Paradigm cites predominantly to *Talbert v. Mauney*, 80 N.C. App. 477, 343 S.E.2d 5 (1986), where we stated that, when a trial court is divested of jurisdiction because of a pending appeal, it "retains limited jurisdiction to hear and consider a . . . motion to indicate what action it would be inclined to take were an appeal not pending." *Id.* at 478–79, 343 S.E.2d at 7 (citations omitted). As a preliminary matter, we note that the cases cited by Paradigm only support its argument that the Commission had jurisdiction to provide an advisory opinion. None of the cited cases indicate that the Commission could grant Paradigm's second motion

to reconsider. Accordingly, Paradigm's argument regarding its second motion to reconsider is overruled, and we limit our review to its motion for an advisory opinion.

To the extent that the Commission has some limited authority to provide an advisory opinion when jurisdiction has been divested because of a pending appeal, that authority is not mandatory. *See id.* Our opinion in *Talbert* does not state that the Commission is obligated to provide an advisory opinion, and we see nothing to suggest that it is. *See id.* Accordingly, and as Paradigm appears to accept in its brief, consideration of the Commission's failure to exercise such authority must be reviewed for abuse of discretion. Under that standard, the Commission's order can be overturned only where its "ruling is manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a reasoned decision." *See State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

While the Commission appears to have some limited discretion to provide an advisory opinion in these circumstances under *Talbert*, we see nothing in the record — and Paradigm offers no argument or reason — to suggest that the Commission's decision to refrain from exercising that limited authority was arbitrary or manifestly unsupported by reason. Indeed, given our Supreme Court's repeated declaration that advisory opinions are not proper for the courts, we must hold that the Commission's decision to decline to give one was entirely reasonable. *See Martin v. Piedmont Asphalt & Paving*, 337 N.C. 785, 788, 448 S.E.2d 380, 382 (1994) ("As this Court has previously pointed out, it is not a proper function of courts to give advisory opinions . . . .") (citations omitted). Accordingly, we affirm the Commission's denial of Paradigm's second motion for reconsideration and for an advisory opinion.

## C. The Parties' Remaining Issues

**[8]** In addition to the arguments discussed above, Plaintiff contends on appeal in COA 13-220 that Paradigm should have been removed from this case for "engaging in illegal insurance activities, its conflict of interests[,] and . . . failing to unwind the contract between Paradigm and [Arch]." Paradigm alleges, however, that it was excluded from this case by chicanery on the part of Plaintiff. Specifically, Paradigm has contended that: (1) it was not served with notice of any of the proceedings leading up to the Commission's 6 November 2012 opinion and award in violation of the RP Rules;[17] (2) neither Plaintiff nor the Commission

---

17. The record on appeal does not contradict this allegation.

sought to join Paradigm in the proceedings below even though it was a necessary party;[18] and (3) "Plaintiff's counsel failed to disclose that the [DOI] has already rejected" the allegations he asserted on appeal regarding Paradigm's status as a co-insurer.[19] Plaintiff responds to these allegations, in part, by asserting that Paradigm intentionally excluded itself from the proceedings before the Commission as a matter of trial strategy because it preferred to make its arguments through Arch.

Given the allegations made by Paradigm and Plaintiff, we conclude that the record is insufficient to address their remaining arguments on appeal. Paradigm's allegations suggest that they were improperly excluded from this case and that the Commission lacked crucial information when making its contested decisions. Plaintiff's response suggests, in part at least, that this is not so. Because the record is not competent on these issues, we cannot resolve them on appeal. For that reason, we return jurisdiction to the Commission and remand for further proceedings on these Paradigm issues, including the taking of additional evidence, if necessary.

AFFIRMED in part; REVERSED in part; REMANDED in part.

Judges BRYANT and DILLON concur.

---

18. Paradigm does not explicitly cite to a procedural rule for support. However, in connection with its assertion that Plaintiff did not seek to join Paradigm, Paradigm states in a footnote that "Plaintiff has never provided an explanation why he failed to comply with RP Rule [10C.0110]." Rule 10C.0110 states:

> An RP may be removed from a case upon motion by either party for good cause shown or by the . . . Commission in its own discretion. The motion shall be filed with the Executive Secretary's Office *and served upon all parties and the RP.* Any party or the RP may file a response to the motion within 10 days. The . . . Commission shall then determine whether to remove the RP from the case. . . .

4 N.C. Admin. Code 10C.0110 (2012) (amended effective 1 June 2000) (emphasis added). Pursuant to our discussion *infra*, we do not address the merits of this argument. Nonetheless, we note that the cases cited in Paradigm's brief rely on the application of Rule 19 of the North Carolina Rules of Civil Procedure — not RP Rule 10C.0110.

19. In support of this third point, Paradigm appends documents not included in the record on appeal. Paradigm explains the presence of these documents by alleging that Plaintiff launched an official investigation with the DOI regarding Paradigm's status as an insurer before the Commission's 6 November 2012 opinion and award and "never advised the . . . Commission about the [DOI]'s decision." As a result, Paradigm contends, the documents in the appendix "could not properly be included in the [record]."