IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-333

Filed: 5 December 2017

North Carolina Industrial Commission, No. 13-717855

HARRISON HALL, Employee-Plaintiff,

v.

U.S. XPRESS, INC., Employer,

and

LIBERTY MUTUAL INSURANCE COMPANY, Carrier, Defendants.

Appeal by plaintiff and defendants from Opinion and Award entered 7 December 2016 by the North Carolina Industrial Commission. Heard in the Court of Appeals 20 September 2017.

> *R. James Lore, Attorney at Law, and Law Office of James S. Aven, by James S. Aven, for plaintiff-appellee, cross-appellant.*

> *Hedrick Gardner Kincheloe & Garofalo, LLP, by Matthew J. Ledwith and M. Duane Jones, for defendant-appellants, cross-appellees.*

ZACHARY, Judge.

U.S. Xpress, Inc. (defendant, with Liberty Mutual Insurance Company, collectively, defendants) appeals from an opinion and award of the North Carolina Industrial Commission that awarded Harrison Hall (plaintiff) workers' compensation benefits. Defendants argue that the Commission lacked subject matter jurisdiction

over plaintiff's claim for workers' compensation benefits, and that the Commission erred by awarding plaintiff benefits for attendant care that was provided prior to the date upon which plaintiff filed an Industrial Commission Form 18, and by sanctioning defendants. Plaintiff has filed a cross-appeal in which he argues that the Commission erred by limiting the award of attendant care to eight hours per day, by failing to continue a per diem allowance defendants had previously paid to plaintiff and his wife, and by requiring plaintiff to contribute $400 per month toward the rental of a handicapped-accessible apartment. We conclude that the Commission's opinion and award should be affirmed.

Factual and Procedural Background

The pertinent facts are largely undisputed. Plaintiff was born in 1959 and was 56 years old at the time of the hearing on this matter. In 1999, plaintiff began working as a long distance truck driver for defendant, a trucking company based in Tennessee. Plaintiff was living in Fayetteville, North Carolina, at that time. On 5 July 2002, while plaintiff was delivering merchandise in North Carolina, he was pinned between his delivery truck and another vehicle. Defendants have not disputed that this was an injury by accident arising from his employment with defendant, or that "plaintiff sustained injury to his back and right leg during the performance of his job duties for defendant-employer. . . ." Following the accident that injured plaintiff, defendants reported the accident to the legal entity that administers the

Tennessee Workers' Compensation Act. Since 6 July 2002, defendants have voluntarily paid workers' compensation wage loss benefits of $463.30 per week to plaintiff, pursuant to the Tennessee Workers' Compensation Act.

In addition to weekly indemnity payments, defendants have paid workers' compensation medical benefits of approximately $8,406,832.00 for treatment of the injuries plaintiff suffered in the accident, pursuant to the Tennessee Workers' Compensation Act and fee schedule. Plaintiff was initially treated by medical providers in North Carolina; he later moved to West Virginia, in order to receive assistance from his girlfriend, who is now his wife. In 2004, defendants transferred plaintiff's medical care from West Virginia to Boston, Massachusetts, where plaintiff and his wife were residing at the time of the hearing on his claim. Unfortunately, despite receiving medical care, plaintiff has continued to suffer serious health problems. As a result of the accident in 2002, plaintiff has had approximately 390 surgical procedures, including amputation of his right leg. Because plaintiff's leg was amputated up to his buttock, he is not a candidate for a prosthetic leg. He has also suffered from kidney failure, which makes him dependent upon dialysis, as well as other medical problems, including diabetes, elevated cholesterol levels, dental problems, and depression.

Between the date of plaintiff's accident and 2013, defendants provided workers' compensation medical and indemnity benefits to plaintiff pursuant to the Tennessee

Workers' Compensation Act. As part of the agreement between plaintiff and defendants for the transfer of plaintiff's medical care to Boston, defendants agreed to pay plaintiff and his wife each a $25.00 per diem allowance for meals. In 2011, defendants discontinued payment of the per diem allowance, and plaintiff learned that his workers' compensation benefits had been paid under Tennessee's, rather than North Carolina's, workers' compensation law. On 8 April 2013, plaintiff filed Industrial Commission Form 18 with the North Carolina Industrial Commission, seeking workers' compensation medical and indemnity benefits. Defendants then filed Industrial Commission Form 19 reporting plaintiff's accident to the North Carolina Industrial Commission on 23 April 2013. On 2 May 2013, defendants filed Industrial Commission Form 61, asserting that the Industrial Commission lacked jurisdiction over plaintiff's claim. In response, plaintiff filed Industrial Commission Form 33 requesting that his claim be heard by the Commission.

The parties agreed to a bifurcated proceeding, in which a hearing on the issue of subject matter jurisdiction was conducted prior to a hearing on plaintiff's entitlement to workers' compensation benefits. Following a videoconference conducted in February of 2014, Deputy Commissioner Stephen T. Gheen entered an opinion on 12 January 2015, concluding that the Industrial Commission had jurisdiction over plaintiff's claim. Deputy Commissioner Gheen entered a modified order on 10 February 2015, making minor changes to his original order. On 25

February 2015, defendants gave notice of their appeal from the Deputy Commissioner's order.

Additional proceedings by the Commission addressed the issue of plaintiff's claim for workers' compensation medical and indemnity benefits. On 29 October 2015, an interlocutory opinion and award was entered by Deputy Commissioner J. Brad Donovan in which he incorporated the order entered by Deputy Commissioner Gheen, noting that it was "favorable to the plaintiff on the issue of jurisdiction. . . ." This order left open the calculation of certain benefits. On 8 January 2016, Deputy Commissioner Donovan entered an order finalizing the award and otherwise incorporating his earlier order awarding plaintiff workers' compensation medical and indemnity benefits. Plaintiff appealed to the Full Commission for review of aspects of the award of benefits, and defendants appealed to the Full Commission, challenging the Commission's subject matter jurisdiction as well as certain parts of Deputy Commissioner Donovan's award.

The case was heard by the Full Commission on 23 June 2016. On 7 December 2016, the Commission, by means of an order entered by Commissioner Bill Daughtridge, Jr. with the concurrence of Commissioners Bernadine S. Ballance and Tammy Nance, awarded plaintiff certain workers' compensation medical and indemnity benefits. The specific provisions of the Commission's order are discussed below, as pertinent to the issues raised by the parties on appeal. Plaintiff and

defendants entered timely notices of appeal to this Court from the Commission's opinion and award.

Standard of Review

"Generally, appellate review of the Commission's decisions is limited to 'whether any competent evidence supports the Commission's findings of fact and whether [those] findings . . . support the Commission's conclusions of law.'" *Burley v. U.S. Foods, Inc.*, 368 N.C. 315, 317, 776 S.E.2d 832, 834 (2015) (quoting *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 700 (2004)). In addition, "[b]ecause the Industrial Commission is the sole judge of the credibility of the witnesses and the weight of the evidence[, w]e have repeatedly held that the Commission's findings of fact are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary." *Medlin v. Weaver Cooke Constr., LLC*, 367 N.C. 414, 423, 760 S.E.2d 732, 738 (2014) (internal quotation omitted).

"On appeal, this Court may not reweigh the evidence or assess credibility. Findings of fact may be set aside on appeal only when there is a complete lack of competent evidence to support them[.]" *Kelly v. Duke Univ.*, 190 N.C. App. 733, 738-39, 661 S.E.2d 745, 748 (2008) (internal quotation omitted). Findings that are not challenged on appeal are "presumed to be supported by competent evidence" and are "conclusively established on appeal." *Johnson v. Herbie's Place*, 157 N.C. App. 168,

180, 579 S.E.2d 110, 118 (2003) (citation omitted). The "Commission's conclusions of

law are reviewed *de novo.*" *McRae*, 358 N.C. at 496, 597 S.E.2d at 701 (citation

omitted).

The Industrial Commission's findings regarding subject matter jurisdiction are

subject to a different standard:

> "The finding of a jurisdictional fact by the Industrial
> Commission is not conclusive upon appeal even though
> there be evidence in the record to support such finding. The
> reviewing court has the right, and the duty, to make its
> own independent findings of such jurisdictional facts from
> its consideration of all the evidence in the record." . . . This
> Court makes determinations concerning jurisdictional
> facts based on the greater weight of the evidence.

*Capps v. Southeastern Cable*, 214 N.C. App. 225, 226-27, 715 S.E.2d 227, 229 (2011)

(quoting *McCown v. Hines*, 353 N.C. 683, 686, 549 S.E.2d 175, 177 (2001)).

<u>Appeal by Defendants</u>

<u>Subject Matter Jurisdiction</u>

Defendants argue first that the Industrial Commission lacked subject matter

jurisdiction over plaintiff's claim for workers' compensation benefits. Defendants

contend that plaintiff's claim was barred by the provisions of N.C. Gen. Stat. § 97-24

(2016). This statute provides in relevant part that:

> (a) The right to compensation under this Article shall be
> forever barred unless (i) a claim . . . is filed with the
> Commission or the employee is paid compensation as
> provided under this Article within two years after the
> accident or (ii) a claim . . . is filed with the Commission

> within two years after the last payment of medical compensation when no other compensation has been paid and when the employer's liability has not otherwise been established under this Article.

In this case, plaintiff did not file a claim with the North Carolina Industrial Commission within two years of his accident, and thus jurisdiction is not proper under N.C. Gen. Stat. § 97-24(a)(i). The jurisdictional dispute between the parties is whether plaintiff filed a claim "within two years after the last payment of medical compensation when no other compensation has been paid and when the employer's liability has not otherwise been established under this Article," as specified in § 97-24(a)(ii). "Under section 97-24(a)(ii), a plaintiff must show that: (1) his claim was filed within two years after the last payment of 'medical compensation,' (2) no 'other compensation' was paid, and (3) the employer's liability has not otherwise been established under the Act." *Clark v. Summit Contrs. Group, Inc.*, 238 N.C. App. 232, 235, 767 S.E.2d 896, 898-99 (2014).

The facts of *Clark* are comparable to those of the instant case. In *Clark*, this Court held that "the record clearly shows that [the] defendants' liability had not otherwise been established under the Act because [the] defendants had not been held liable for [the] plaintiff's injuries pursuant to a North Carolina workers' compensation claim[.] . . . Thus, the third element is satisfied." *Id.* The same is true in this case; when plaintiff filed Industrial Commission Form 18, defendants' liability had not been determined pursuant to a North Carolina workers' compensation claim.

The *Clark* opinion explained that "whether [the] plaintiff can satisfy the remaining two elements of N.C. Gen. Stat. § 97-24(a)(ii) turns on this Court's understanding of the terms 'medical compensation' and 'other compensation' as they are contemplated within the North Carolina Workers' Compensation Act." *Clark*, 238 N.C. App. at 235, 767 S.E.2d at 899.

N.C. Gen. Stat. § 97-2 (2016) sets out the legal definition of various terms "[w]hen used in this Article, unless the context otherwise requires[.]" These definitions include, as relevant to this appeal, the following:

> (11) Compensation. -- The term "compensation" means the money allowance payable to an employee or to his dependents as provided for in this Article, and includes funeral benefits provided herein.
>
> (19) Medical Compensation. -- The term "medical compensation" means medical, surgical, hospital, nursing, and rehabilitative services, including, but not limited to, attendant care services prescribed by a health care provider authorized by the employer or subsequently by the Commission, vocational rehabilitation, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability[.] . . .
>
> (20) Health care provider. -- The term "health care provider" means physician, hospital, pharmacy, chiropractor, nurse, dentist, podiatrist, physical therapist, rehabilitation specialist, psychologist, and any other person providing medical care pursuant to this Article.

Two previous North Carolina cases have interpreted these definitions in a factual context that is functionally indistinguishable from the present case: that of a workers' compensation claimant who (1) suffers a compensable injury; (2) receives medical and indemnity compensation that is voluntarily provided by the employer, pursuant to the workers' compensation statutes of a state other than North Carolina; and (3) files a claim within two years of the last medical compensation provided under the other state's workers' compensation act. *McGhee v. Bank of America Corp.*, 173 N.C. App. 422, 618 S.E.2d 833 (2005), addressed the question of whether, for purposes of determining whether a plaintiff filed a claim within two years of the last payment of medical compensation, payments to out-of-state medical providers should be considered. In *McGhee*, the plaintiff filed a claim for workers' compensation benefits in North Carolina within two years of her last medical compensation payment to her Virginia health care providers. This Court upheld the Commission's finding that the "plaintiff had timely filed a claim within two years after the last payment of medical compensation pursuant to N.C. Gen. Stat. § 97-24(a)(ii) because the employer paid medical providers in Virginia" within two years of the date that the plaintiff filed her claim. *Clark*, 238 N.C. App. at 236, 767 S.E.2d at 899 (discussing *McGhee*, 173 N.C. App. at 427, 618 S.E.2d at 836).

In *Clark*, the claimant filed a claim within two years of last receiving medical compensation in Florida. As in *McGhee*, the defendant argued that, for purposes of

determining whether a plaintiff filed a workers' compensation claim within two years of the last payment of medical compensation, payments from a state other than North Carolina should not be considered. This Court expressly rejected that argument:

> While it is clear that, pursuant to [the] plaintiff's Florida workers' compensation claim, [the] defendants made payments for his medical treatment in Florida, the issue is whether those payments constituted "medical compensation" under the Act. . . . [The] defendants contend that "[n]one of [the] plaintiff's medical payments were made 'in the judgment of' the North Carolina Industrial Commission or in a matter before the North Carolina Industrial Commission." Thus, according to [the] defendants, [the] plaintiff did not receive any payments of "medical compensation" and subsection (ii) is inapplicable. . . . There is no basis for [the] defendants' contention that "medical compensation" only includes payments made in a matter pending before the North Carolina Industrial Commission. In contrast, our caselaw establishes that an employee's claim is timely filed under section 97-24(a)(ii) if it is filed within two years after the defendant's last payment of "medical compensation" to the plaintiff regardless of where the medical treatment occurs and <u>regardless of whether that payment was ordered as a result of a pending workers' compensation action in North Carolina</u>.

*Clark* at 235-36, 767 S.E.2d at 899 (emphasis added) (citing *McGhee,* 173 N.C. App. at 426-27, 618 S.E.2d at 836). *McGhee* and *Clark* have also rejected the instant defendants' argument that disability payments that are not provided pursuant to North Carolina workers' compensation are "other compensation" within the meaning of N.C. Gen. Stat. § 97-24(a)(ii). As stated in *Clark*:

The next issue is whether the benefits [the] plaintiff received under Florida law constitute "other compensation" for purposes of section 97-24(a)(ii). If they do, [the] plaintiff would be unable to satisfy the second element under section 97-24(a)(ii).
" 'Compensation' under the Workers' Compensation Act means 'the money allowance payable to an employee or to his dependents *as provided for in this Article*[.]' ". . . In *McGhee*, this Court interpreted the term "other compensation" and determined that any benefits "paid . . . in lieu of workers' compensation benefits and not made payable . . . pursuant to [North Carolina's] Workers' Compensation Act" did not qualify as "other compensation," and we are bound by that definition[.] In *McGhee*, 173 N.C. App. at 427, 618 S.E.2d at 836, the plaintiff received short-term disability benefits from the employer. On appeal, the defendants argued that the short-term disability benefits constituted "other compensation," making section 97-24(a)(ii) inapplicable. *Id*. However, this Court disagreed, concluding that because the short-term disability benefits were "paid to [the] plaintiff in lieu of workers' compensation benefits and not made payable to [the] plaintiff pursuant to the Workers' Compensation Act[,]" they did not qualify as "other compensation" under section 97-24(a)(ii). Based on *McGhee*, since the workers' compensation benefits [the] plaintiff received in Florida were also "not made payable to [him] pursuant to [North Carolina's] Workers' Compensation Act," *id*., they do not qualify as "compensation," as defined in section 97-2(11) (2013), or "other compensation," as defined in *McGhee*, for purposes of N.C. Gen. Stat. § 97-24(a)(ii).

*Clark* at 237-238, 767 S.E.2d at 900 (emphasis in original) (quoting *McGhee* at 427, 618 S.E.2d at 836-37, and citing *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989)).

In sum, *McGhee* and *Clark* establish that (1) medical compensation provided to a health care provider outside of North Carolina or pursuant to the workers' compensation laws of another state may be considered in determining whether a plaintiff has filed a workers' compensation claim in North Carolina within two years of the last medical compensation, but that (2) for purposes of determining a plaintiff's compliance with N.C. Gen. Stat. § 97-24(a)(ii), disability or other indemnity payments are not considered "other compensation" within the meaning of the statute unless the payments were made pursuant to a North Carolina workers' compensation claim.

In the present case, plaintiff filed Industrial Commission Form 18 seeking workers' compensation benefits within two years of the last payment of medical compensation. The fact that the payments were made to health care providers in Boston, pursuant to the Tennessee workers' compensation statute and fee schedule, does not invalidate them for purposes of determining whether plaintiff's claim was timely filed. In addition, plaintiff's entitlement to disability payments under the North Carolina Workers' Compensation Act had not been previously determined at the time that plaintiff filed a workers' compensation claim. We conclude that plaintiff met the criteria specified in N.C. Gen. Stat. § 97-24(a)(ii), and that the Industrial Commission had jurisdiction over plaintiff's claim.

In reaching this conclusion, we have considered, but have ultimately rejected, defendants' arguments for a contrary result. Preliminarily, we note that the parties

have directed our attention to the circumstances of defendants' payments to plaintiff, as pertinent to whether plaintiff was informed that the medical compensation and disability payments were made pursuant to Tennessee law. Plaintiff characterizes the payments made by defendants as having been made "unilaterally and secretly," while defendants note that plaintiff failed to make inquiries or to pursue the question of whether Tennessee or North Carolina law was the basis of the payments. However, N.C. Gen. Stat. § 97-24(a)(ii) does not include a requirement either that an employer keep a claimant informed of the legal status of disability or medical compensation payments or, alternatively, that a plaintiff investigate this matter. Accordingly, we do not consider the parties' arguments on this issue. Similarly, our conclusion that the Industrial Commission had subject matter jurisdiction has been reached without consideration of plaintiff's estoppel arguments.

Defendants further argue that the payments made to plaintiff's health care providers in Boston do not constitute medical compensation within the meaning of N.C. Gen. Stat. § 97-24(a)(ii). Defendants state that:

> N.C. Gen. Stat. § 97-24 only refers to compensation and medical compensation defined by N.C. Gen. Stat. § 97-2 and paid pursuant to N.C. Gen. Stat. § 97-18 and N.C. Gen. Stat. § 97-25. N.C. Gen. Stat. § 97-24 does not refer to medical compensation paid pursuant to a statutory structure of another state.

Contrary to defendants' contention, there is no reference in N.C. Gen. Stat. § 97-24 to § 97-2, § 97-18, or § 97-25. While it is true that N.C. Gen. Stat. § 97-24 "does

not refer to compensation paid pursuant to a statutory structure of another state," defendant ignores the fact that *McGhee* and *Clark* have explicitly held that such payments are "medical compensation." We conclude that this argument lacks merit.

Defendants next argue that the Commission's "interpretation" of N.C. Gen. Stat. § 97-24 is "inconsistent with the rules of statutory construction." However, the Commission was not charged with developing an "interpretation" of N.C. Gen. Stat. § 97-24 on a blank slate; rather, the Commission properly applied the holdings of *McGhee* and *Clark* to the facts of this case.

Defendants also contend that the Commission failed to employ the statutory definitions of the terms "medical compensation" and "health care provider." The basis of defendants' argument on this issue is a 2011 amendment to § 97-2(19). Previously, the statute defined medical compensation in relevant part as "medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief [.]" Effective 23 June 2011 and applying to claims arising after that date, the definition was changed to "medical, surgical, hospital, nursing, and rehabilitative services, including, but not limited to, attendant care services prescribed by a health care provider authorized by the employer or subsequently by the Commission, vocational rehabilitation, and medicines, sick travel, and other treatment, including medical and surgical supplies, as may reasonably be required to

effect a cure or give relief," with the addition of the underlined phrase "including, but not limited to, attendant care services prescribed by a health care provider authorized by the employer or subsequently by the Commission[.]"

The basis of defendants' argument is not entirely clear. However, it appears that defendants contend that the proper way to interpret § 97-2(19) is to apply the phrase "prescribed by a health care provider" to all the listed types of medical compensation. Defendants contend that, because "health care provider" is defined as including only medical care performed pursuant to the North Carolina Workers' Compensation Act, "only those payments made to clinicians providing medical services pursuant to the North Carolina Workers' Compensation Act constitute 'medical compensation.' " We do not agree. First, the structure of the phrasing in the definition does not support defendants' position. Secondly, the phrase at issue specifies that medical compensation is defined as "including, but not limited to" the attendant care that is described. Moreover, the injury upon which plaintiff's claim is based occurred in 2002, well before the 2011 amendment to the text of N.C. Gen. Stat. § 97-2(19). As a result, the earlier version of the statute governs our analysis of this issue.

Finally, defendants fail to consider the precedential effect of our opinion in *Clark* which, citing *McGhee*, held that medical compensation paid pursuant to the workers' compensation laws of a state other than North Carolina could be considered

for purposes of determining a claimant's compliance with N.C. Gen. Stat. § 97-24(a)(ii). Defendants first contend that *McGhee* is distinguishable from the present case because in *McGhee* the "defendants stipulated that [their] medical payments constituted 'medical compensation.'" We are at a loss to understand the basis of this erroneous assertion, given that in *McGhee* the "Defendants argue[d] that [the] plaintiff neither filed her claim within two years of the accident, nor within two years after the last payment of medical compensation by [the] defendants" and that "the payment at issue, $ 72,554.38 paid to medical providers in Virginia, does not meet the statutory definition of 'medical compensation' under section 97-2(19) of the North Carolina General Statutes[.]" *McGhee* at 425-26, 618 S.E.2d at 836. We conclude that defendants have misstated the facts of *McGhee* and that the defendants in that case did not stipulate that the medical compensation at issue met the statutory definition.

In their Reply Brief, defendants acknowledge our holding in *Clark*, and essentially argue that *Clark* was wrongly decided. We do not agree with defendants on this point. Moreover, regardless of the merits of our decision in *Clark*, it is long-established that "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In re Civil Penalty* at

384, 379 S.E.2d at 37. For the reasons discussed herein, we conclude that the Industrial Commission had jurisdiction over plaintiff's claim.

Award of Attendant Care

In this case, plaintiff's wife provided attendant care services for plaintiff beginning in 2006, when plaintiff underwent his first leg amputation surgery. When plaintiff filed Industrial Commission Form 18 seeking workers' compensation benefits, he requested retroactive and prospective compensation for the cost of the attendant care provided by his wife. Defendants do not dispute that a workers' compensation claimant may receive reimbursement for the cost of attendant care provided prior to the date when he filed a claim for North Carolina workers' compensation benefits. However, in order "to receive compensation for medical services, an injured worker is required to obtain approval from the Commission within a reasonable time after he selects a medical provider. If [the] plaintiff did not seek approval within a reasonable time, he is not entitled to reimbursement." *Mehaffey v. Burger King*, 367 N.C. 120, 128, 749 S.E.2d 252, 257 (2013) (citing *Schofield v. Great Atl. & Pac. Tea Co.*, 299 N.C. 582, 593, 264 S.E.2d 56, 63 (1980)). Defendants argue that the Commission erred by awarding plaintiff compensation for the cost of attendant care provided by his wife prior to the date on which he filed Industrial Commission Form 18, on the grounds that plaintiff failed to seek approval

for attendant care within a reasonable time after he selected his wife to provide this service. We disagree.

The crux of defendants' argument is that, in determining whether plaintiff sought approval from the Commission to receive attendant care within a reasonable time, our starting point should be the date of plaintiff's injury or, at the latest, the year 2006 when plaintiff's wife began providing full-time attendant care. We have concluded above that plaintiff properly filed a claim for workers' compensation benefits within two years of the last payment for medical compensation. Prior to his filing a claim, there was no basis upon which the North Carolina Industrial Commission might have exercised jurisdiction over plaintiff's entitlement to workers' compensation benefits, including the approval of payment for attendant care services. As discussed above, we are resolving the issues raised in this appeal without formal consideration of the doctrine of estoppel. Nonetheless, we observe that between 2002 and 2011 plaintiff had no reason to file a claim with the North Carolina Industrial Commission. The Commission found that plaintiff made his request for attendant care "within a reasonable time of having selected his wife to provide those services and requested approval from the Industrial Commission of his wife as his attendant care provider within a reasonable time of having filed his North Carolina claim." We hold that this finding is supported by the evidence, and that it supports the Commission's conclusion that:

20. . . . Immediately upon filing his claim for workers' compensation benefits in North Carolina in 2013, plaintiff did request approval from the North Carolina Industrial Commission of attendant care services payable to his wife, Mrs. Hall. The Commission, therefore, concludes that plaintiff's request for retroactive reimbursement of attendant care to his wife was made within a reasonable time.

We conclude that the Commission did not err by awarding plaintiff retroactive workers' compensation benefits for the cost of his attendant care, and that defendants are not entitled to relief on the basis of this argument.

Sanctions

Defendants' final argument is that the Industrial Commission erred by imposing a sanction against them for unfounded litigiousness. In its award, the Commission stated that:

As sanctions for defendants' unfounded litigiousness of the jurisdictional issue and denying the compensability of plaintiff's various medical conditions that Dr. Pribaz correlated to plaintiff's original compensable right leg injury, without presenting expert medical evidence to the contrary, defendants shall be responsible for paying to plaintiff's counsel the lump sum of [$5,000.00]. . . .

N.C. Gen. Stat. § 97-88.1 (2016) provides that if "the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who

has brought or defended them." Our review of the Commission's decision to impose a

sanction is a two-step process:

> First, whether the defendant had a reasonable ground to
> bring a hearing is reviewable by this Court *de novo*. If this
> Court concludes that a party did not have reasonable
> ground to bring or defend a hearing, then we review the
> decision of whether to make an award and the amount of
> the award for an abuse of discretion. In conducting the first
> step of the analysis, the reviewing court should consider
> the evidence presented at the hearing to determine [the]
> reasonableness of a defendant's claim. As such, the burden
> is on the defendant to place in the record evidence to
> support its position that it acted on reasonable grounds.

*Blalock v. Southeastern Material*, 209 N.C. App. 228, 231-32, 703 S.E.2d 896, 899

(2011) (internal citations and quotation marks omitted).

On appeal, defendants make a conclusory assertion that "[b]ased upon the

statutory argument above, the arguments distinguishing this matter from *McGhee*,

and the facts of this matter, Defendants did not engage in unfounded and stubborn

litigiousness." Defendants have not directed our attention to any legal or factual

basis for their denial of the compensability of the medical conditions to which the

Commission referred in its award. In regard to defendants' denial of the

Commission's jurisdiction, we conclude that the issue of jurisdiction was previously

resolved in opinions issued by this Court that are, in all material respects,

indistinguishable from the present case and that therefore constitute binding

precedent. We conclude that the Commission did not err by concluding that

defendants had engaged in unfounded litigiousness and did not abuse its discretion in its award of attorney's fees to plaintiff's counsel.

Appeal by Plaintiff

Attendant Care

Plaintiff first argues that the Commission erred by limiting its award of the cost of attendant care to eight hours per day. Plaintiff offered expert medical testimony that he was in need of eight to twelve hours of attendant care per day, seven days per week. It is plaintiff's contention that the Commission must view the evidence in the light most favorable to the claimant, and that this requirement strips the Commission of the authority to exercise its discretion to choose the appropriate award when presented with a range of possible awards. We do not agree.

Plaintiff directs our attention to the statement in *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), that "[t]he evidence tending to support [the] plaintiff's claim is to be viewed in the light most favorable to [the] plaintiff, and [the] plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." However, the issue in *Adams* was whether the plaintiff was entitled to any workers' compensation benefits. The opinion did not address the Commission's discretion to choose an appropriate award based upon its consideration of the evidence. Plaintiff contends that, in a situation such as the present case in which the sole medical expert testifies to a high to low range of the number of hours of medical

services as being medically necessary, if the Commission has the discretion to select any number of hours within that range, this would "render[] the *Adams* mandate meaningless." In essence, plaintiff is asking us to reweigh the evidence, which we will not do:

> Because it is the fact-finding body, the Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. The Commission's findings of fact are conclusive on appeal if they are supported by any competent evidence. Accordingly, this Court does not have the right to weigh the evidence and decide the issue on the basis of its weight.

*Shaw v. US Airways, Inc.*, 217 N.C. App. 539, 541-42, 720 S.E.2d 688, 690 (2011) (internal quotation omitted). We conclude that the Commission did not err by awarding plaintiff eight hours per day of attendant care.

### Per Diem Allowance

Plaintiff argues next that the Commission erred by failing to require defendants to continue payment of a per diem allowance of $50.00 per day for meals that defendants had previously paid to plaintiff between 2004 and 2011. The sole basis of plaintiff's argument on this issue is that defendants should be estopped from discontinuing these payments. We conclude that plaintiff is not entitled to relief on the basis of this argument.

The parties agree that the per diem allowance was for meals. Plaintiff's only argument is that defendants should be estopped from discontinuing the per diem payments.

> [T]he essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Gore v. Myrtle/Mueller*, 362 N.C. 27, 33-34, 653 S.E.2d 400, 405 (2007) (quoting *Hawkins v. M & J Fin. Corp.*, 238 N.C. 174, 177-178, 77 S.E.2d 669, 672 (1953)).

Defendants paid the per diem meal allowance for seven years. Plaintiff has not established that he relied upon a misrepresentation that these payments would continue indefinitely. In addition, the Commission found that the per diem payments did not constitute medical compensation. We conclude that plaintiff has failed to establish that he produced evidence of the elements of equitable estoppel and that

the Commission did not err by ruling that defendants were entitled to cease payment of the per diem allowance.

Housing Allowance

Plaintiff's final argument is that the Commission erred by requiring him to contribute $400 per month toward the cost of renting his apartment. Plaintiff contends that the Commission improperly allowed defendants a "credit" against their obligation to pay the entire cost of plaintiff's housing. Upon review of the facts of this case, in the context of the relevant jurisprudence, we conclude that plaintiff is not entitled to relief on the basis of this argument.

A leading case on the issue of an employer's responsibility to provide handicapped accessible housing for a workers' compensation claimant is *Derebery v. Pitt County Fire Marshall*, 318 N.C. 192, 347 S.E.2d 814 (1986).[1] In *Derebery*:

> The parties agree[d that] the applicable statutory provisions are contained in the following part of N.C.G.S. § 97-29: "In cases of total and permanent disability, compensation, including reasonable and necessary nursing services, medicines, sick travel, medical, hospital, and other treatment or care of [sic] rehabilitative services shall be paid for by the employer during the lifetime of the injured employee."[2]

---

[1] *Derebery* addressed an employer's obligation to a claimant who was permanently and totally disabled. In this case, the Commission has awarded plaintiff temporary total disability benefits, but the issue of whether defendant is permanently and totally disabled has not been resolved. This distinction does not affect the outcome of plaintiff's appeal.

[2] Effective 23 June 2011 and applying to cases arising after that date, the lifetime entitlement to medical compensation was replaced by a requirement that the issue of a claimant's total disability be revisited approximately every ten years. Because the present case arose before 2011, if plaintiff is determined to be permanently and totally disabled, he will be entitled to lifetime medical compensation.

*Id.* at 199, 347 S.E.2d at 818. After reviewing this statute and cases from other jurisdictions, our Supreme Court "conclude[d] on the basis of the legislative history surrounding N.C. Gen. Stat. § 97-29, this Court's prior interpretation of that statute and the persuasive authority of other courts interpreting similar statutes that the employer's obligation to furnish 'other treatment or care' <u>may</u> include the duty to furnish alternate, wheelchair accessible housing." *Id.* at 203-04, 347 S.E.2d at 821 (emphasis added).

In *Timmons v. North Carolina DOT*, 123 N.C. App. 456, 460, 473 S.E.2d 356, 358 (1996), *aff'd per curiam*, 346 N.C. 173, 484 S.E.2d 551 (1997), another case in which the claimant was permanently and totally disabled, the plaintiff was building a house. The Commission held that the defendant should pay the additional cost of rendering the house handicapped accessible, but was not responsible for the entire cost of the construction:

> At the time of [the] plaintiff's injury in 1980, G.S. § 97-25 required, in relevant part: "medical, surgical, hospital, nursing services, medicines, . . . rehabilitation services, and other treatment including medical and surgical supplies as may reasonably be required to . . . give relief . . . shall be provided by the employer." . . . In *Derebery v. Pitt County Fire Marshall*, 318 N.C. 192, 347 S.E.2d 814 (1986), the North Carolina Supreme Court held that an employer's duty to provide "other treatment or care" as contained in G.S. § 97-29, was sufficiently broad as to include the duty to provide handicapped accessible housing. . . . In our view, the words "and other treatment" contained in G.S. § 97-25 are susceptible of the same broad construction accorded the

similar language of G.S. § 97-29 by the Supreme Court in *Derebery*, and we reject [the] defendant's argument to the contrary.

We do not agree with [the] plaintiff, however, that *Derebery* requires [the] defendant to pay the entire cost of constructing his residence. . . . [T]he expense of housing is an ordinary necessity of life, to be paid from the statutory substitute for wages provided by the Workers' Compensation Act. The costs of modifying such housing, however, to accommodate one with extraordinary needs occasioned by a workplace injury, such as the plaintiff in this case, is not an ordinary expense of life for which the statutory substitute wage is intended as compensation. Such extraordinary and unusual expenses are, in our view, properly embraced in the "other treatment" language of G.S. § 97-25, while the basic cost of acquisition or construction of the housing is not.

*Id.* at 461-62, 473 S.E.2d at 359.

In *Burnham v. McGee Bros. Co.*, 221 N.C. App. 341, 727 S.E.2d 724 (2012), the plaintiff, who was permanently and totally disabled, rented a two-bedroom handicapped accessible apartment and asked defendants to pay the additional cost for the second bedroom that he required for storage of equipment related to his disability. "Plaintiff specified that he sought compensation for 'the additional cost of housing due to [his] injury.' In response, [the] defendants asserted that they had no obligation to contribute to [the] Plaintiff's ongoing rental expenses because applicable 'case law establishes that rent is an ordinary expense of life.' " *Id.* at 344, 727 S.E.2d at 726. The Commission ordered the defendants to pay the additional rent for the second bedroom. On appeal, the plaintiff argued that the defendants had no valid

basis upon which to challenge their obligation to pay the additional part of the plaintiff's rent. This Court disagreed, noting that only a few cases had addressed such issues:

> . . . [The] Plaintiff argues that [the] Defendants had no valid legal basis for resisting his request for assistance with his rental expenses given that an employer's "responsibility to pay for proper accommodative housing has been part of North Carolina law for many years." However, our review of the pertinent decisions in this area indicates that the exact point at issue in this case has not been specifically addressed.

*Id.* at 347, 727 S.E.2d at 728. *Burnham* then summarized the two earlier opinions, noting that "both *Derebery* and *Timmons* draw a distinction between the ordinary expenses of life and the extraordinary expenses associated with modifying or constructing housing for the purpose of rendering it handicapped-accessible" but that "neither decision addresses an employer's obligation to pay ongoing rental expenses that are attributable to a plaintiff's disability such as the cost of an additional bedroom used to store the equipment, supplies, and mobility-related devices needed to accommodate [the] Plaintiff's paraplegia." *Id.* at 348-49, 727 S.E.2d at 729. This Court concluded that, given "the paucity of published cases addressing the extent to which an employer or insurance carrier is liable for the additional costs associated with housing for handicapped individuals and the complete absence of any decision addressing the extent to which employers and their carriers are liable for ongoing increased rental payments stemming from needs like those present here," the

Commission did not err by determining that the defendants did not act unreasonably in defending against the plaintiff's claim for rental payments. *Id.* at 349, 727 S.E.2d at 729-30.

In 2013, this Court decided *Espinosa v. Tradesource, Inc.*, 231 N.C. App. 174, 752 S.E.2d 153 (2013), which reviewed an opinion of the Industrial Commission in which the defendants were ordered to pay, *inter alia*, the *pro rata* difference between the permanently and totally disabled plaintiff's pre-injury rent and his post-injury rent. Both parties appealed, with the defendants arguing that it was error to require them to pay anything beyond the cost of rendering the apartment handicapped accessible, and the plaintiff arguing that the Commission erred by reducing his award by the amount he paid for rent before the injury. This Court upheld the Commission:

> As a preliminary point, we note that the parties' arguments assume rules that are rigid and broadly applicable in the cases discussed above. A reading of section 97-25 makes it clear, however, that an award of "other treatment" is in the discretion of the Commission. . . . Section 97-2(19), as written at the time of [the] Plaintiff's injury, further explained that the type of medical compensation the employer must pay is "*in the judgment of the Commission*[.]" . . . The Supreme Court's decision in *Derebery* and our own decision in *Timmons* represent the outer limits of the Commission's authority under those statutes, not entirely new rules to be followed in place of or in addition to the statutes created by our legislature.
>
> In this case, the Commission determined that [the] Defendants should pay the *pro rata* difference between the rent required for [the] Plaintiff's new, handicapped-accessible home and the rent [the] Plaintiff had to pay as

an ordinary expense of life before his injury. The Commission sensibly reasoned that living arrangements constitute an ordinary expense of life and, thus, should be paid by the employee. The Commission also recognized, however, that a change in such an expense, which is necessitated by a compensable injury, should be compensated for by the employer. Because [the] Plaintiff did not own his own home in this case, he was required to find new rental accommodations that would meet his needs. In this factual circumstance, it was appropriate for the Commission to require the employer to pay the difference between the two.

While circumstances may occur in which an employer is required to pay the entire cost of the employee's adaptive housing, neither the Supreme Court's opinion in *Derebery* nor our holding in *Timmons* support [the] Plaintiff's assertion that such a requirement is necessary whenever an injured worker does not own property or a home. Such a ruling would reach too far.

*Id*. at 186, 752 S.E.2d at 160-61 (emphasis in original).

We conclude that *Espinosa* is functionally indistinguishable from the present case and that our jurisprudence clearly establishes both that (1) an employer may be required to pay for the expense of providing handicapped housing for a disabled claimant, and that (2) the Commission has the discretion to require the claimant to contribute a reasonable amount toward rent, such as the amount of his pre-injury rent. We conclude that the Commission did not err by requiring plaintiff to contribute to the cost of renting a handicapped-accessible apartment.

## Conclusion

Thus, for the reasons discussed above, we conclude that the Industrial Commission did not err and that its opinion and award should be affirmed.

AFFIRMED.

Judges DAVIS and MURPHY concur.